Hicks *v.* State.

Opinion delivered March 29, 1920.

1. CRIMINAL LAW—OBJECTION RAISED ON MOTION FOR NEW TRIAL.— The contention that defendants, who were negroes, were discriminated against in that no members of their race sat or was summoned to serve on either the grand or the petit jury was raised too late when first presented in their motion for new trial.

2. CRIMINAL LAW—FAIRNESS OF TRIAL.—Where negroes charged with murdering a white man were defended by eminent counsel, the trials were had according to law, the jurymen correctly charged as to the law, and the testimony was legally sufficient, it can

not be assumed that the trial was not a fair one because the circumstances surrounding the killing were such as to cause excitement and feeling against defendants.

3. HOMICIDE—PERSONS AIDING MURDERER.—Persons present aiding, abetting and assisting another in committing murder are as guilty as the murderer himself.

4. HOMICIDE—CONSPIRACY.—Where a number of members of a negro lodge assembled on the morning after a white man had been killed by a member of their lodge, all of them being armed, and went to a village with the intention avowed by one of their number of killing the white people who came there, the jury were warranted in finding the act of one of them in killing a white man while they were going to the village was done pursuant to a conspiracy previously formed, which contemplated the possible killing of white men.

5. CRIMINAL LAW—INTERLINEATIONS ON BILL OF EXCEPTIONS.—An interlineation in the verdict as found in the bill of exceptions will not be disregarded when accompanied by the judge's certificate that it was made before he signed the bill, and correctly showed the verdict as returned, and when the judgment shows the verdict with such interlineation to be correct.

Appeal from Phillips Circuit Court; *J. M. Jackson,* Judge; affirmed.

*Scipio A. Jones* and *Murphy & McHaney,* for appellants.

1. Appellants were discriminated against on account of their color and no colored man sat upon the jury or was summoned to serve.

2. The verdict is plainly against the evidence. 107 Atl. 554.

3. The verdict is defective.

*John D. Arbuckle,* Attorney General, and *J. B. Webster,* Assistant, for appellee; *Robert C. Knox,* of counsel.

Defendants are not guaranteed under our Constitution, nor that of the United States, a trial by members of his own race, but only a fair and impartial trial by a jury who are unbiased and unprejudicial without regard to color or race. 100 U. S. 322. The panel should have been challenged, and as he did not, he can not complain that there were no negroes on the jury. 21 Ark. 212; 5 *Id.* 444; 29 *Id.* 17; 101 *Id.* 443; 99 *Id.* 462; 94 *Id.* 465.

SMITH, J. Appellant Frank Hicks was indicted for murder in the first degree, alleged to have been committed by shooting one Clinton Lee, and at his trial was convicted of that crime. Appellants, Frank Moore, Ed Hicks, J. E. Knox, Ed Coleman, and Paul Hall, were indicted for the same crime, and were tried together, and were all convicted of murder in the first degree. Appeals have been perfected from both judgments, and as the questions raised are substantially the same in each case we dispose of both with one opinion.

It is insisted as ground for reversal in each case that appellants, who are all men of color, were discriminated against on that account, and that no colored man sat, or was summoned to serve, upon either the grand jury which returned the indictments or upon the petit juries which tried the cases, and that no colored man had served on any jury in Phillips County—where the trials occurred—for many years. This assignment of error is answered by saying that the question was first raised in the motion for a new trial, and it, therefore, comes too late to be now considered. *Tillman* v. *State,* 121 Ark. 322; *Eastling* v. *State,* 69 Ark. 89.

It is also insisted on behalf of all the appellants that the verdicts are contrary to the law and the evidence, and are not supported by sufficient evidence, and that the trials occurred under such circumstances as that appellants have been convicted without due process of law. The facts upon which these contentions are chiefly made were not developed at the trial, but are brought into the record by affidavits filed in support of the motions for new trials.

Discussing these questions together, it may be said that appellants, together with many other men of their own race, were members of an organization known as the Farmers' Progressive Household Union of America. According to the affidavits filed in support of the motions for new trials, this was a fraternal and social organization, organized for the lawful purpose of promoting the financial interests of its members; it met

in secret, excluding all persons except those who had been properly initiated, but, according to testimony on behalf of the State, members were told upon their initiation to expect and prepare for trouble with the white people. Members went armed to the meetings, and armed pickets were placed about the church in which the meetings were held to prevent persons not members, fortified with the password, from approaching the building. While one of these meetings was in progress, an automobile containing two white men and one negro passed along the public road near this building, and stopped some forty or fifty yards from it, whereupon the pickets fired into the car and killed one of the white men in it.

At the trials from which these appeals come the following facts were developed. Early in the morning after the killing of the man in the car a number of the lodge members, probably as many as fifty, including appellants, assembled at or about the houses of appellants Moore, Hall and Coleman, about a mile from Elaine and Hoop Spur, where the shooting of the night before had occurred. All, or practically all, of the members were armed, and appellant Moore made the statement that they would kill the white people who came there. All of this is admitted, but it is explained that the members had gathered only to resist an attack being made on themselves, and that they intended to kill the white men whom they expected to come only to prevent the white men from killing them.

Some time between 11 a. m. and 1 p. m. firing near Elaine or Hoop Spur was heard, whereupon appellants, with a number of others, fell in line, and proceeded to march toward Elaine, Moore having said, as they fell into line, that some of their members were being attacked, and that they would go and help them fight. As they marched along by twos and fours, they crossed a railroad, and, as they did so, they observed, at the home of one McCoy, a white man, about a quarter of a mile away, a number of white men standing in the road at

McCoy's house or seated in the car which had stopped there on the roadside. When they observed the white men, appellant Frank Hicks said he would shoot at them. He knelt, took aim and fired two shots, one of which struck Clinton Lee, who died just after he was carried into McCoy's house. These shots were fired from a high-powered rifle, and at such distance away that some of the white men standing near Lee stated that they did not hear the report of the gun which killed him. This party of white men consisted of officers who had come to Elaine to effect the arrest of the men who had killed the man in the automobile the night before. There was testimony to the effect that when Hicks said he would shoot a member of his party told him not to do so, but no one made any attempt to restrain him. After this shooting the party dispersed, and during the excitement of the next few days two other white men were killed and a number of negroes.

It is now insisted that because of the incidents developed at the trial and those recited in the motion for new trials, and the excitement and feeling growing out of them, no fair trial was had, or could have been had, and that the trial did not, therefore, constitute due process of law.

It is admitted, however, that eminent counsel was appointed to defend appellants, and no attempt is made to show that a fair and impartial trial was not had, except as an inference from the facts stated above, the insistence being that a fair trial was impossible under the circumstances stated.

We are unable, however, to say that this must necessarily have been the case. The trials were had according to law, the jury was correctly charged as to the law of the case, and the testimony is legally sufficient to support the verdicts returned. We cannot, therefore, in the face of this affirmative showing, assume that the trial was an empty ceremony, conducted for the purpose only of appearing to comply with the requirements of the law, when they were not in fact being complied with.

As to the appellants, Frank Moore, Ed Hicks, J. E. Knox, Ed Coleman and Paul Hall, it is insisted that the testimony does not sufficiently connect them with the act of Frank Hicks in firing the fatal shot to make them criminally responsible for that act. The law of the subject was properly declared, and we think the testimony of the numerous witnesses who were examined and cross-examined at the trial supports the finding that those appellants were present when Frank Hicks killed Clinton Lee, and that they aided, abetted and assisted him in doing so, and if this is true they are as guilty as Hicks himself. According to these witnesses, those appellants were all armed, and before leaving the place from which they started the purpose of going to Elaine to fight the white men found there was announced, and we think this testimony warranted the jury in finding that Hicks' act in firing the fatal shot was done pursuant to a conspiracy previously formed, which contemplated violence, and the possible killing of white men.

In the case of appellant Frank Hicks, it is insisted that the judgment must be reversed because of the defective verdict. The verdict as found in the bill of exceptions was originally written in typewriting as follows: "We, the jury, find the defendant, Frank Hicks, guilty as charged in the indictment." Over this verdict has been interlined, between the words "guilty" and "as" the following words: "of murder in the first degree," so that the verdict as interlined reads: "We, the jury, find the defendant, Frank Hicks, guilty of murder in the first degree as charged in the indictment." On the margin of the page of the transcript on which this verdict appears is the following certificate made and signed by the trial judge: "The interlineation made in this verdict was made before I signed the bill of exceptions, and correctly shows the verdict as it was returned by the jury. J. M. Jackson, Circuit Judge." The judgment of the court also sets out in full the verdict returned, and the verdict as it is there recorded conforms to the certificate of the trial judge set out above.

It is true that in the cases of *Johnson* v. *State,* 84 Ark. 95, and *Hobbs* v. *State,* 86 Ark. 360, and *Bridger* v. *State,* 122 Ark. 391, we ignored as unauthorized certain interlineations made with a lead pencil for the reason, there stated, that the interlineations were unexplained, unauthenticated and apparently made without authority. But it has not been decided that this court will necessarily ignore interlineations appearing in a bill of exceptions or a transcript. Upon the contrary, interlineations may be a proper part of the record, and will be so treated by us unless it appears such interlineations were not properly authorized. Here we have the certificate of the trial judge saying that the interlineation was made before he had approved or signed the bill of execeptions, and, in addition, we have in the judgment proper a record of the verdict which shows it to be in proper form.

We have given these cases the careful consideration which their importance required, but our consideration is necessarily limited to those matters which are properly brought before us for review, and as no error has been made to appear in either case the judgments must be affirmed. It is so ordered.