BOWEN *v.* STATE.

4286                                   168 S. W. 2d 836

Opinion delivered March 1, 1943.

*H. S. Grant,* for appellant.

*Guy E. Williams,* Attorney General, and *Earl N. Williams,* Assistant Attorney General, for appellee.

GRIFFIN SMITH, C. J. Appellant was charged with breaking into the home of Grover Nance in Newport for the purpose of stealing. The crime was alleged to have occurred ". . . the fourth day of July, 19342."

When the State closed, Bowen's attorney moved to dismiss on the ground that evidence varied from the indictment in that conduct complained of was shown to have occurred July 4, 1942, instead of July 4, "19342." From an adverse ruling appellant saved exceptions. Defense was that the accused, because of drunkenness, did not remember the transaction, and if the home was entered [1] the act was without conscious accord.

---

[1] Circumstances attending the crime are substantially these: Appellant's presence in the Nance home was discovered by Billy, a young son of Grover Nance. The lad carried a morning newspaper route. He slept with an older brother, Gus. While trying to go to sleep Billy saw what he thought were flashes from matches being struck in another room where his mother and a young sister slept. Closer observation convinced him that someone was using a flashlight, switching it on and off. Billy "nudged" Gus, who seems to have been a powerful man. Gus had previously heard a "racket" near the back door, but thought little of it. After Billy had whispered that he thought a flashlight was being used, Gus rushed into his mother's room. He testified that Bowen (whom he did not then know) was standing over the bed occupied by his mother and sister. The surprised intruder ran, but was caught by Gus, who, with the aid of his father and Billy, succeeded in detaining appellant until officers arrived. In the Negro's pocket a skeleton key was found, also a large nail. Near where the scuffle with Gus occurred a "case" knife was found. Before entering the house appellant removed his shoes and left them on the steps.

The fact of former conviction was brought out by appellant on direct examination. On cross examination he admitted that in 1923 he entered a plea of guilty at Caruthersville, Mo., the charge being grand larceny and burglary. A plea of guilty to burglary and grand larceny was entered at Poplar Bluff, Mo., in 1924. In 1928 he again pleaded guilty to burglary and grand larceny, and in 1931 a plea of

Instruction No. 5 was intended to give appellant the benefit of his plea of drunkenness.[2] After Instructions Nos. 6 and 7 had been given, appellant's attorney said: "I want an instruction that if [Bowen] was drunk and didn't know what he was doing—I want an instruction about that." Whereupon Instruction No. 8 was given, as follows:

"Drunkenness . . . is no defense . . . unless [the accused] was so drunk as to cause him to labor under such defect of reasoning that he would not know the nature of the act he was doing, and if he did know, he was ignorant that it was wrong; and if he did it, he was so drunk he couldn't keep from carrying it out anyway. That is just how drunk he would have to be." There was no objection.

In his motion for a new trial appellant insists it was error to instruct that drunkenness[3] was no excuse for commission of the crime, ". . . and then [for the court to] instructed the jury to the contrary." It is said in the motion for a new trial that the instruction,[4] *in the manner given*, "was prejudicial to defendant's rights. If said instruction had not been given in such manner the defendant's rights might have been different, and the defendant might have been acquitted."

Appellant's defense was appropriately presented in Instruction No. 5, effect of which was to tell the jury that if Bowen, either through mistake or because he was too drunk to form an intent, entered the Nance home, he should be acquitted. Appellant desired a more discriminating and comprehensive statement of the law; and so, in effect, the jury was told by Instruction No. 8 that

guilty was entered at Newport, the charge being that of carrying a pistol. Bowen went by the name of Jim Harris, also Ollie Brown.

[2] "You are instructed that if you believe the defendant just made a mistake and got in the wrong house, and that it was an honest mistake—he didn't know what he was doing, or where he was, and just happened to get in there through mistake, whether he was drunk or otherwise—then he would not be guilty. If you believe it was just an honest mistake he made there to get in, that he had no intention at the time to hurt anybody or to commit a felony, then he would not be guilty of burglary."

[3] This instruction appears as No. 8.

[4] It is not clear whether the reference is to Instruction No. 5 or Instruction No. 8. [The word "instrument" was used, but apparently "instruction" was intended.]

drunkenness was no excuse unless the degree of intoxication deprived appellant of his power to comprehend the nature of his conduct, or, if conscious of the act complained of, still if appellant, because of alcoholic stupor, did not know what he did was wrong, criminal liability would not attach. In other words, before drunkenness could be interposed as a legal shield the mental status produced by whiskey must have controlled physical volition.

The instructions were certainly as favorable as appellant was entitled to, even more so; but, if appellant's attorney believed there was conflict, or that Instruction No. 8 given at his request required clarification, the court's attention should have been called to what was thought to be disharmony between Instruction No. 5 and Instruction No. 8, and any error in the declaration given at appellant's request ought to have been pointed out.

Trial was had September 23, with verdict, judgment, and motion for new trial the same day; also the order overruling the motion for new trial was made September 23.

Only errors brought forward in the motion for a new trial were that the verdict was contrary to law, contrary to the evidence, contrary to the law and evidence; that the motion to dismiss should have been sustained because the indictment charged commission of the crime in 19342; also, that the instructions on drunkenness were "given in a manner prejudicial to the defendant's rights." [5]

October 7 motion in arrest of judgment was filed. It alleged that because the defendant was a Negro his constitutional rights had been invaded in that the indictment was returned by an all-white grand jury and conviction was by a petit jury composed entirely of white persons. Further allegations were that Jackson county contained a large Negro population; and, although members of that race competent to serve on juries were known to jury commissioners, Negroes had been consistently excluded because of racial prejudice.

---

[5] The defendant was sentenced to serve six years in the penitentiary.

A second assignment is that in selecting the jury appellant was denied full number of peremptory challenges. There is the statement that ". . . the court ruled he was entitled to only seven challenges, when the defendant claims he was entitled to more in such felony cases." Contention was that appellant ". . . asked a ruling on the number when saving his exceptions, and the court so far has refused to pass on the matter except by denying him further challenges after seven."

Although the motion in arrest of judgment shows it was filed October 7, indorsement on the order overruling it is dated September 23. By certiorari the court's docket sheet was brought up. It shows that the motion in arrest of judgment was filed October 7 "[and] overruled." The writ of certiorari is dated December 14. December 31 the court heard appellant on his motion to correct the judgment. The order was adverse to the several contentions ". . . because the record fails to show [the matters alleged to have transpired], and no evidence [was] introduced to show [such alleged transactions], and further, the records seem to show all matters were properly recorded . . . in the transcript."

Appellant's motion to correct the record recites that he was convicted of burglary ". . . *on the 22d day of May*." The court apparently treated the motion as relating to the trial of September 23. The petition to this court for certiorari alleges that appellant was convicted September 22. These discrepancies are unimportant.

The only ground upon which a judgment may be arrested is that facts stated in the indictment or information do not constitute a public offense within the jurisdiction of the court. Pope's Digest, § 4064. *Lewis* v. *State,* 169 Ark. 340, 275 S. W. 663; *Hicks* v. *State,* 143 Ark. 158, 220 S. W. 308. Other cases are to the same effect.

That "19342" was erroneously written into the indictment for 1942 is so obviously a typist's mistake that no one could possibly be deceived by it. Of course appellant does not contend he prepared to defend a crime supposed to have been committed 17,400 years beyond July

4, 1942. Before going to trial the accused had a right to ask when the crime was perpetrated. Instead, he announced ready. Nor, can a defendant take chances on being acquitted by a white jury and, if disappointed, claim that constitutional guarantees have been abridged. The same reasoning applies to the indictment. Appellant elected to stand trial without asserting the right he now seeks. Similar contentions were made in *Hicks* v. *State,* 143 Ark. 158, 220 S. W. 308. It was held that the objection, first brought to the court's attention when motion for a new trial was presented, came too late. In the instant case, as has been shown, the objection was not mentioned until the motion in arrest of judgment was filed two weeks after sentence. See *Tillman* v. *State,* 121 Ark. 322, 181 S. W. 890.

There is nothing in the record sustaining appellant's contention that he was not permitted to peremptorily challenge eight veniremen. (Initiated Act No. 3, 1936, § 18. Pope's Digest, § 3998). Appellant has not brought himself within the provisions of § 1547 of Pope's Digest which authorizes a bystanders' bill of exceptions; and this is true even if we assume (for the purpose of this discussion only) that appellant's motion to correct the record so that it would show his exceptions to the court's ruling limiting the number of peremptory challenges to seven was in proper form. Methods by which the rights here contended for may be preserved are set out in *Pearson* v. *State,* 119 Ark. 152, 178 S. W. 914. See comment at pages 158-159 of the Arkansas Report, page 917, South Western Reporter.

At most appellant's undated motion to correct the record was only an allegation that the bill of exceptions was incomplete. The matter counsel insists the stenographer omitted was counsel's exception to the court's refusal to permit the requisite number of peremptory challenges. When the court did not agree with appellant's contention, the fact (if it be such) that the exception was saved should have been shown through a bystanders' bill of exceptions. See *Boone* v. *Goodlett & Co.,* 71 Ark. 577, 76 S. W. 1059.

Affirmed.