HIGGINS, Justice. .
 

 The accused, a negro, was convicted by the jury of the crime of rape of a white woman and the judge sentenced him to death by electrocution. He appealed from the conviction and sentence and relies upon three Bills of Exception for the annulment of the judgment.
 

 Bill of Exception No. 1 was reserved when the district judge overruled the defendant’s motion to quash the indictment, the grand jury venire and the grand jury panel. He alleged that he was a negro and was charged with raping a white woman; that he was indicted by the grand jury of the Parish of Orleans;' that his trial would be held before the Criminal District Court of that Parish where one-third of the population consisted of negroes; that the general venire box for the Parish of Orleans did not contain the names of any members of the colored race at the time the panel for the grand jury was drawn; that the members of the grand jury, which had returned the indictment against him, were persons of the white race exclusively; that the officers charged by law with placing the names of persons qualified to act as jurors in the general venire box not only failed to place in the box the names of any negroes qualified to serve as grand jurors, but deliberately excluded them; that on information and belief, he alleges there has not been a negro on the grand jury of the Parish of Orleans for at least twenty years; that the officers of the said Parish have systematically, unlawfully, and unconstitutionally excluded negroes from the grand jury in the Parish of Orleans during that period of time; that this exclusion of negroes was made only because of their race and color; that he is informed and believes that the entire panel from which the grand jury was selected consisted of the names of seventy-five persons, none of whom were of the colored race; and that the above acts of the officials constitute a denial to him of due process of law and the equal protection of the law, guaranteed him by the Constitution of Louisiana and the Fourteenth Amendment of the ' Constitution of the United States. He prayed that the indictment against him and the entire grand jury venire and the grand jury panel be quashed and annulled.
 

 The State filed a demurrer to the motion to quash on the ground that it was not filed, pleaded and urged until after the third judicial day of the expiration of the grand jury term of the Parish of Orleans during which the defendant was indicted, and prayed that the defendant’s plea be dismissed.
 

 
 *31
 
 The demurrer is based upon Article 202 of the Code of Criminal Procedure, which reads:
 

 “All objections to the manner of selecting or drawing any juror or jury or to any defect or irregularity that can be pleaded against any array or venire must be filed, pleaded, heard or urged before the expiration of the third judicial day of the term for which said jury shall have been drawn, or before entering upon the trial of the case if it be begun sooner; otherwise, all such objections shall be considered as waived and shall not afterwards be urged or heard.”
 

 The issue presented is to be determined by the correct interpretation of the above article.
 

 The indictment was filed in open court on August 20, 1942, and it is alleged therein that the crime was committed on June 25, 1942. The accused was arraigned before the bar, accompanied by his counsel, Henry Read, Esq., on August 26, 1942, and pleaded not guilty. Mr. Read was succeeded by attorney Alcide J. Weysham, and on September 25, 1942, the court appointed Rudolph F. Becker, Jr., as counsel, to represent the defendant, and Weysham remained in the case as his associate. When the matter was called for trial on September 29th, the defendant’s attorneys requested a continuance on the ground that they had not had sufficient time to prepare for the trial thereof, and a continuance was granted. On October 7th, counsel for the defendant filed an application, asking the court to appoint a Lunacy Commission to determine the defendant’s mental condition. On October 16th and 17th, a hearing was held to determine whether the court would appoint a Lunacy Commission and, on the latter date, the court refused to do so on the ground that the defendant was sane and able to understand the criminal proceedings filed against him and assist in his defense thereof. On the same day, the State asked that a date be set for the trial of the case and the defendant’s attorneys objected to the defendant’s arraignment at that time, because they desired to file further pleadings. It was then agreed, in open court, that if rearraigned, the defendant would be granted one week from October 17th to file any additional pleas, and that, at the time of filing them, he would be permitted by the court to withdraw his plea of not guilty. On October 23rd, the defendant filed, in open court, the motion to quash the indictment and the entire grand jury venire and panel, after obtaining permission from the judge to withdraw his former plea of not guilty. This motion was set for hearing on October 26th, and upon the State’s request, the hearing was continued until October 28th, on which day the State filed its demurrer to the motion to quash. The matter was heard and taken •under advisement by the court. On November 9th, the court sustained the demurrer on the ground that the motion to quash was not timely filed and assigned written reasons in which it was pointed out that the term of the grand jury, which returned the indictment against the defendant, began on March 2, 1942 and ended on September 8, 1942, and 'that the defendant’s counsel had from August 26, 1942 through Septembei 11, 1942 within which to file the motion to
 
 *33
 
 quash, and having filed it on October 23rd, 1942, or forty-two days too late, it could not be considered on its merits. Thereupon, counsel for the accused reserved a bill of exception. The defendant was then re-arraigned, pleaded not guilty, and the case was set for trial on November 17, 1942. After the trial, the accused was found guilty as charged by the jury on November 19, 1942. A motion for a new trial was then filed and overruled and on January 15, 1943, the court imposed the death sentence, by electrocution, upon defendant.
 

 The attorneys for the defendant, in their brief, state:
 

 “We * * * submit that Article 202 of the Code of Criminal Procedure is clear, that there is no question
 
 that the three judicial days that the Code refers
 
 to,
 
 is the first three judicial days of the term
 
 for which any jury, whether it is a grand jury or petit jury, is selected to serve. (Italics ours.)
 

 “* * * * * *
 

 “Therefore to comply with the provisions of Article 202 of the Criminal Code of Procedure the defendant’s counsel would have had to file his Motion to Quash the Indictment not later than March 5, 1942, which date was the latest date that he could have filed his Motion to Quash, in order to comply with the provisions of the Code.
 

 “In the case at bar, that would have been impossible, because the alleged crime was not committed until June 25, 1942, which was long after the expiration of the third judicial day of the term for which the Grand Jury was drawn to serve.”
 

 The State pleaded and the trial judge so ruled that Article 202 of the Code of Criminal Procedure should be interpreted as requiring the filing of such pleadings or motion to quash within three judicial days of the expiration of the grand jury term during which the indictment was returned, unless the trial of the case “be begun sooner”.
 

 The Article of the Code in question has an historical background, which is helpful in arriving at the correct construction to be placed upon its provisions.
 

 The first statute on this subject matter was Act No. 44 of 1877, Section 11 of which reads:
 

 “That all objections to the manner of drawing juries, or to any defect or irregularity than [that] can be pleaded against any array or venire, must be urged on the first day of the term, or all such objections shall be considered as waived, and shall not afterwards be urged.”
 

 In 1889, while the above statute was in force and effect, the case of State v. Strickland, 41 La.Ann. 513, 6 So. 471, was tried. There the offense, murder, had been committed after the time fixed in the statute in which to object and plead “to the manner of drawing juries, or to any defect or irregularity” with reference to any array or venire. In short, the crime was committed after the first day of the term. The motion to quash the indictment was founded upon the alleged illegal drawing of the jury venire from which the grand jury had been formed. The Court pointed out that the statute was not applicable to a case where the offense charged was committed after
 
 *35
 
 the first day of the term nor could it apply to defeat a motion to quash where the defendant was arraigned after the first day of the term. With reference to the legislative intent and purpose of the statute, the Court said:
 

 “It is very clear to our minds that this legislation was prompted by the frequent rulings of the courts tending to cure a vicious practice on the part of defendants in criminal prosecutions who would take their chances of an acquittal before a defective jury, and who would in case of conviction urge irregularities in the formation of the jury, which they should have set up in the preliminary stages of the trial."
 

 During that same year and term of the Supreme Court, the case of State v. Sterling, 41 La.Ann. 679, 6 So. 583, 584, was presented to it. The offense of embezzlement therein charged had been committed in 1887, the indictment was returned on December 1, 1887, and the defendant was arraigned and pleaded to the indictment on December 12, 1887. In February, 1889, or two years later, the defendant filed a motion to quash the indictment on the ground that the drawing of the panel from which the grand jury was selected, was irregular and illegal. On the issue of whether or not the motion to quash had been seasonably or timely filed, after quoting the provisions of Section 11, Act No. 44 of 1877, the Court said:
 

 “ * * * The motion set forth no excuse for the untimely filing. It did not allege prior ignorance and rece'nt discovery of the defect. Obviously, nothing in the motion exempted it from the operation of the statute, and, under the plain terms thereof, the judge was not only authorized, but bound, to overrule it, and the correctness of his ruling in so doing cannot be questioned.
 

 “After the motion to quash had been thus properly overruled, defendant filed a motion to reopen the motion to quash, with the view of proving his prior ignorance of the defect pleaded as an excuse for the untimeliness of his plea.
 

 “We cannot say the judge erred in refusing this motion. There must be an end to such questions. There was no good reason why the proper ground should not have been laid in the original motion to quash.”
 

 In the year 1917, the question was again presented to the Court in the case of State v. Thomas, 141 La. 560, 75 So. 241, 242. There the accused was indicted for murder on September 8, 1916, and was arraigned and pleaded not guilty on September 10, 1916. On October 2, 1916, or twenty-two days later, he filed a motion to quash the indictment on the ground that the grand jury which returned it was illegally constituted.
 

 On the original hearing, in holding that the motion to quash was filed too late, the Court stated:
 

 “No reason is alleged for the delay in the filing of the motion, and, in a stronger case than is here presented, it was said by the court:
 

 “ ‘Obviously nothing in the motion exempted it from the operation of the statute’ (Act 44 of 1877, § 11), ‘and, under the plain terms thereof, the judge was not only authorized, but bound, to overrule it, and the correctness of his ruling in so doing cannot
 
 *37
 
 be questioned.’ State v. Sterling, 41 La.Ann. [679], 681, 6 So. [583], 584.”
 

 A rehearing was granted, limited to this issue. In the opinion on rehearing, the Court pointed out that Act No. 89 of 1894 repealed and superseded Act No. 44 of 1877 and the provisions of Section 11 of the Act of 1877 were retained in Section 10 of the Act of 1894; that Act No. 99 of 1896 repealed and superseded Act No. 89 of 1894, but the eleventh section of the Act of 1896 retained the tenth section of the Act of 1894. However, when the Legislature through Act No. J35 of 1898 repealed and superseded the Act of 1896, Section 16 of the Act of 1898 modified the law so as to grant the accused the right to file any objection or plea to any irregularity or illegality in the selecting or drawing of the jury or the array or venire at any time before entering upon the trial of the case, otherwise all such objections shall be considered waived. As the motion to quash the indictment had been filed before entering upon the trial of the case, it was held to have been filed in time. The Court stated that the ruling in State v.' Sterling, supra, was rendered in accord with the statute of 1877. After a consideration of the merits of the motion to quash, it was concluded by the Court that it (the motion) was not well founded and the original opinion affirming the verdict and sentence appealed from was reinstated.
 

 In the case of State v. Jenkins, 160 La. 757, 107 So. 564, the defendant was indicted for the crime of manslaughter. He was arraigned on October 9, 1925, and pleaded not guilty and the case was set for trial on October 26, 1925, or the first day of the criminal term of the court. On that day, and before the case was called for trial, he filed a motion to quash the petit jury venire on the ground of certain irregularities. The motion was tried and overruled and a bill of exception reserved. The State argued that the motion to quash could not be considered because it had been filed subsequent to the arraignment of the defendant. The Court stated that the original opinion in the case of State v. Thomas, supra, was not pertinent because it was based upon the provisions of Act No. 44 of 1877, whereas the opinion on the rehearing, predicated on Section 16 of Act No. 135 of 1898, was applicable and that a motion to quash the indictment on the grounds of irregularity in the drawing of the petit jury venire was timely filed before entering upon the trial of the case.
 

 In 1928, the Legislature adopted the Code of Criminal Procedure of which Article 202 is a part.
 

 ■ The controversial provisions of that article of the Code are quite different from those of Section 16 of Act No. 135 of 1898 but are similar to the provisions of Section 11 of Act No. 44 of 1877, except that Section 11 of the Act of 1877 provides for a delay of one judicial day, or that the objection to the drawing of the jury, etc., must be urged on the first day of the term, and Article 202 of the Code of Criminal Procedure provides that- the objection or plea due to any defect or irregularity in the drawing of any juror or jury, etc., must be filed and pleaded not later than the third judicial day of the term for which the jury shall have been drawn.
 

 
 *39
 
 The Legislature must be presumed to have passed Article 202 of the Code of Criminal Procedure in the light of the statutes and decisions which preceded it. If the lawmakers had intended merely to retain the provision of Section 16 of Act No. 135 of 1898 granting the right to file a motion to quash at any time before trial, it simply would have used the language of that section of the statute in writing the article of the Code. Since this was not done and the article is worded quite differently, the conclusion is inescapable that the members of the Legislature intended to change the law and this is especially true where Section 16 of the statute had been previously construed and applied by this Court.
 

 In the case of State v. Smothers, 1929, 168 La. 1099, 123 So. 781 the accused was indicted for the crime of murder. He filed a motion to quash the indictment based upon alleged irregularities in the drawing of twenty names from which the grand jury was selected. The district judge overruled the motion to quash the indictment based on Article 203 of the Code of Criminal Procedure, finding that there was neither any fraud practiced nor any irreparable injury done to the accused. This Court upheld the ruling of the trial judge. The defendant had also filed a motion to quash the petit jury venire, based upon the same grounds alleged in the motion to quash the indictment. The trial judge held that the motion was filed too late, citing Article 202 of the Code of Criminal Procedure. This Court stated that, as the indictment was returned in the court before the criminal term at which the trial of the case was begun, Article 202 of the Code of Criminal Procedure applied. The Court also stated that whether or not Article 202 could apply to an indictment returned during the same term when the trial was begun was a question which it was not called upon to consider, but said that the provisions of Article 287 of the Code of Criminal Procedure might be invoked in a case of that kind. Article 287 provides that the demurrer and the motion to quash must be filed, tried, and disposed of before the trial on the merits. This article deals generally with demurrers to and motions to quash indictments and there are many grounds upon which such pleas are founded besides defects and irregularities in drawing jurors, juries, venires, panels and arrays. But Article 202 covers specifically defects and irregularities in drawing jurors, juries, venires, panels and arrays. Therefore, the latter article would govern in such particular matters.
 

 We observe that the provisions of Article 287 are in harmony with the latter portion of Article 202, which governs the case where the trial is started during the same term when the indictment is returned.
 

 In the case of State v. White, 193 La. 775, 192 So. 345, 347, the defendant was indicted on October 18, 1935, for the murder of Wm. P. Wales on September 14, 1935. He was a fugitive from justice and was not apprehended until December 21, 1938. On February 9, 1939, he was arraigned and pleaded not guilty and the case was set for trial on March 2, 1939. He had reserved his right to withdraw the plea of not guilty and file a motion to quash the indictment and
 
 *41
 
 such other pleas as his counsel might deem advisable and these rights were granted him by the trial judge. The defendant went to trial without filing any such motions or pleadings and was found guilty as charged without reserving any bill of exception during the trial. . Before sentence, he filed a motion for a new trial based upon the ground that he was a negro and that there had been a systematic exclusion of persons of the colored race from the general venire and grand jury that returned the indictment against him and he was, therefore, denied due process and equal protection of the laws guaranteed him by Article 1 § 2 of the Constitution of the State of Louisiana of 1921 and the Fourteenth Amendment to the Constitution of the United States.
 

 The trial judge ruled that as the defendant had not availed himself of his right to file a motion to quash the indictment, the jury venire, and the grand jury panel, and having elected to go to trial without doing so, he waived his rights to set up any objections to the proceedings of the Jury Commission, the drawings, the organization and qualifications of the jury venire or the grand jury panel. The Court stated:
 

 “But counsel for defendant contends that defendant’s conviction and sentence should be reversed for the reasons, as stated in his brief, that (1) under the recent deT cisión of the Supreme Court of the United States in the case of Pierre v. Louisiana, 1939, 306 U.S. 354, 59 S.Ct. 536, 83 L.Ed. 757, ‘ * * * the mere fact that negroes are not selected for grand jury service, constitutes discrimination against negroes on account of race or color * * * ’ and that his failure to file motions to quash the indictment cannot be treated as a waiver of his constitutional rights, inasmuch as the time allotted by the trial judge for the filing of such motions had expired when the Pierre case was handed down; and (2) that even though no motions to quash the indictment were filed and no bills of exception were reserved during the trial of the case, these errors are merely procedural, while the errors complained of here are sufficiently serious and prejudicial under our jurisprudence to warrant á reversal.
 

 “It is expressly provided by the Code of Criminal Procedure, in prescribing the qualifications of a grand or petit juror, that ‘ * * *
 
 there shall be no distinction made on account of race, color or previous condition of servitude
 
 * * *.’ Article 172. (Italics ours.) State v. Turner, 133 La. 555, 63 So. 169; State v. Gill, 186 La. 339, 172 So. 412. But the accused who claims that he has been deprived of his rights because of the failure of the jury commission to follow this mandate of the law must raise the question properly and timely, that is, in a motion to quash the indictment or to set aside the jury panel before going to trial, otherwise he waives his right to do so. All such matters cannot be raised for the first time after conviction in a motion for a new trial. Articles 202, 253, 284, 286, and 287 of the Code of Criminal Procedure; 1 Marr’s Criminal Jurisprudence 425, page 648; State v. Thompson, 28 La.Ann. 187; State v. Saba, 191 La. 1009, 187 So. 7. See, also, State v. Washington, 33 La.Ann. 896;
 
 *43
 
 State v. Jackson, 36 La.Ann. 96; State v. Tolett, 174 La. 553, 141 So. 57; United States v. Gale, 109 U.S. 65, 3 S.Ct. 1, 27 L.Ed. 857; Hicks v. State of Arkansas, 143 Ark. 158, 220 S.W. 308; Washington v. State of Florida, 95 Fla. 289, 116 So. 470, writ refused by the United States Supreme Court 278 U.S. 599, 49 S.Ct. 8, 73 L.Ed. 528.
 

 “The United States Supreme Court in the case of United States v. Gale, supra, held that (109 U.S. 65, 3 S.Ct. 2, 27 L. Ed. 857) ‘ * * *
 
 by pleading not guilty to the indictment and going to trial without making any objection to the mode of selecting the grand jury, such objection was waived.’
 
 (Italics ours.)
 

 “The identical question raised in -the instant case was raised and answered by the Supreme Court of Arkansas in the case of Hicks v. State of Arkansas, supra (which decision was affirmed by the United States Supreme Court without comment, 254 U.S. 630, 41 S.Ct. 7, 65 L.Ed. 447) as follows (143 Ark. 158, 220 S.W. 309) :
 

 “ Tt is insisted as ground for reversal in each case that appellants, who are all men of color, were discriminated against on that account, and that no colored man sat, or was summoned to serve,' upon either the grand jury which returned the indictments or upon the petit juries which tried the cases, and that no colored man had served on any jury in Phillips county — where the trials occurred — for many years.
 
 This assignment of error is answered by saying that the question was first raised in the motion for a new trial, and it, therefore, comes too late to be now considered.’
 
 (Italics ours.)
 

 “An analysis of the Pierre case conclusively shows that counsel is mistaken about the holding in that case. The defendant in the Pierre case, conforming to the well established law of procedure,
 
 properly• and timely moved to quash the indictment and the general venire from which had been drawn the grand jury that returned the indictment against him and the petit jury drawn for the week of his trial,
 
 and the United States Supreme Court based its decision on the fact that the evidence in the record supported the motion to quash the indictment. He is equally mistaken about the time limit for the filing of a motion to quash the indictment, because, under the express provisions of the Code of Criminal Procedure, a motion to quash the indictment may be made at any time before the trial of the case. Articles 202 and 253; State v. Thomas, 141 La. 560, 75 So. 241; 1 Marr’s Criminal Jurisprudence, 425, page 648.” (Underscoring ours.).
 

 “Counsel concedes the constitutionality of the law providing for the selection of juries and under this law an accused is not entitled of right to be indicted or tried by a jury composed of any particular type or class of persons, either of negroes, of whites, or of a mixture of both. The composition of a jury is a matter that can be waived and the accused evidently did this in the instant case, since the record does not disclose that his counsel, before the trial of the case, either filed or requested the court’s permission to file motions of any kind.
 

 
 *45
 
 ■"A grand jury is presumed to be legally constituted and to possess, the qualifications prescribed by law. 1 Marr’s Criminal Jurisprudence, 428, page 652; State v. Gonsoulin, 38 La.Ann. 459; State v. Guillory, 44 La.Ann. 317, 10 So. 761. It was counsel’s duty, therefore, if he knew or had reason to believe the contrary to be true, to request of the judge permission to file the necessary motions to cure the defects complained of in the organization of the jury and to reserve bills of exception in the event such permission was not granted.
 

 “ * * * It is our opinion that when defendant went to trial without first filing a motion to quash the indictment for the reasons urged here, he waived his right to do so and cannot, for the first time, after trial and conviction, in a motion for a new trial, urge them. To hold otherwise would give an accused the advantage of another trial in the event of his conviction, in that he could urge, as was done here, the invalidity of the indictment upon which he was convicted after conviction, instead of before going to trial as provided for by law. On the other hand, if the accused had been acquitted and later had been reindicted by a grand jury selected as defendant is contending for now, he certainly could successfully plead former jeopardy.”
 

 The verdict and sentence were affirmed.
 

 It will be noted that as the accused waited until after the trial and verdict to attempt to raise the issue as to the legality of the drawing of the grand jury and panel, it was unnecessary for the Court to consider the question presently before us. Under all of the pertinent articles of the Code, of Criminal Procedure the defendant’s plea in that case was too late, coming after the verdict was rendered.
 

 The instant case is identical with the above cited one, in that the trial thereof was begun after the expiration of the grand jury term during which the accused was indicted. It is different in that the defendant actually went to trial and filed his motion to quash after the verdict was returned finding him guilty as charged' and only in connection with the motion for a new trial. The case is authority for the proposition of law that if the motion to quash the indictment, the jury venire, or jury panel is not timely or seasonably filed, the accused is held to have waived his right to file such pleadings. Article 202 of the Code of Criminal Procedure contains provisions to that effect and .they were enforced by the Court.
 

 The constitutionality of Article 202 of the Code of Criminal Procedure is not attacked in the instant case. The construction of that article contended for by the defendant’s, able counsel that the delay provided therein for making objections and filing pleas for the illegal drawing of any juror or jury array or venire must be filed within three judicial. days after the grand jury has been drawn would tend to seriously involve the constitutionality of that article if applied in the instant case, for the reason that the grand- jury was drawn on March 2, 1942, and the offense was not committed until June 25, 1942. If we were to hold that the article applied
 
 *47
 
 in such a case, it is obvious that the accused would be deprived of the right to have such issue determined and the provisions of the statute would be subject to attack on the grounds of a denial of due process of law.
 

 This Court, in the case of State v. Strickland, supra, in interpreting the provisions of Section 11 of Act No. 44 of 1877, and, in State v. White, supra, in applying the provisions of Article 202 of the Code of Criminal Procedure, pointed out that the Legislature intended to require an accused to file his objections and pleas to any defect or irregularity in the drawing or the selecting of a juror or jury or venire or array within a certain period of time, in order to prevent the defendant from going to trial on the merits, and, in the event he were convicted, assure himself of another trial by withholding his pleas as to any error or irregularities in the drawing and selecting of the jury, venire and array. It is apparent that the Legislature took into consideration the fact that timeliness in filing such pleas was necessary to the effective and proper administration of justice by the State.
 

 Article 191 of the Code of Criminal Procedure provides the machinery for the selection of grand and petit juries for the Parish of Orleans. The Jury Commissioners place in the jury wheel or general venire box a list of approximately 1,200 names. From this list of names is selected the grand and petit jury venires.
 

 Under the provisions of Article 196 of the Code of Criminal Procedure, the Jury Commissioners and the Sheriff draw- 75 names from which the judge of the Criminal District Court, whose term it happens . to be, selects 12 persons on the next day to serve as grand jurors. The drawing by the Jury Commissioners and the Sheriff shall take place twice a year between the fifteenth day and the twentieth day of February and the fifteenth day and the twentieth day of August.
 

 The attack on the array and venire here is based upon alleged discrimination by the Jury Commissioners and the Sheriff in the drawing of the grand and petit jury venires. It is stated that thirty per cent of the population of New Orleans is composed of members of the colored race, who are qualified to serve on both the grand and petit juries. On the trial on the merits of this issue, it would be necessary to summon and interrogate the twelve hundred or more persons comprising the array, and also determine the relative portion of thirty per cent of negroes who could qualify for jury service. Persons charged with offenses under indictments are usually not brought to trial for months and sometimes for years after the time when the members of the grand jury who returned them have gone out of office. The persons who composed the array from which the venires were drawn are very likely to be scattered over a wide area within a reasonable time after the grand jury term ends. If a defendant, under the law, were granted the right to raise this type of objection and file this character of pleading at any time before trial, it is easy to see that in innumerable instances the State would be put at serious disadvantage in making its proof
 
 *49
 
 and this would result in a great many guilty ■persons escaping justice. Apparently, our Legislature, had this in mind because under ■Section 16 of Act No. 135 of 1898, the ■defendant was granted the right to file these types of objections and pleadings ■at any time before the beginning of the trial of the case. The members of the Legislature in 1928 changed that statute by placing into the Code of Criminal Procedure Article 202.
 

 The defendant’s attorneys contend that Article 202 of the Code of Criminal Procedure should be interpreted as requiring the filing of the motion to quash within three judicial days after the date the grand jury has been drawn, whereas, the State' argues that it should be construed to require the filing of the motion to quash within three judicial days of the expiration of the grand jury term which returned the indictment. If the defendant’s attorneys’ theory were adopted by the Court, there would be hardly any opportunity for the grand jury to be impaneled, investigate alleged crimes and bring in indictments against persons charged with violation of criminal statutes within the three judicial days after the grand jury is drawn. This would mean that Article 202 of the Code of Criminal Procedure would be rendered absolutely nugatory because the indictments would .necessarily be returned in open court after the three judicial days from the time the grand jury was drawn and, consequently, it would be an impossibility for the accused in those cases to comply with either the first or the second portion of that article. Clearly, the trial could not begin sootier than the three judicial days after the grand jury is drawn. Some period of time necessarily would be required to arrest the accused, who was at large or had been admitted to bail and even if the indictment were returned immediately upon the grand jury being drawn, the three judicial days might have elapsed before the accused could be apprehended or brought into court to plead. This shows the absurd results that would follow if the defendant’s contention prevails. It must be further remembered that under those circumstances the constitutionality of Article 202 would be seriously involved, because the defendant would be denied an opportunity to present such pleas and objections to the drawing and selection of the jurors, the jury, the jury venire and array, and thereby be denied due process of law. The only other alternative the Court would have under such circumstances and under such a construction of the article would be to hold it had no application to the case and thereby wipe out the article.
 

 On the contrary, if the construction contended for by the State were given the Act, the defendant would be granted the full remainder of the grand jury term during which he was indicted and three full judicial days in addition thereto to file such objections and pleas, unless the State placed him upon trial before that period of time had elapsed under which circumstances he would have to file such objections and pleas before entering upon the trial of the case. Articles 202, 253 and 287, Code of Criminal Procedure. In the latter event, he would have an opportunity to file
 
 *51
 
 a motion to quash the indictment, the juryvenire, array and panel up until the time that the trial of the case was-begun. . He would have to be arraigned. He would be entitled to reasonable notice (dependent upon the seriousness of the charge) of at least forty-eight hours previous to the fixing of his cáse for trial and, therefore, could safeguard his legal rights against any irregularities and illegalities in the selection and drawing of the grand and petit juries and venires. Thus interpreted, the provisions of Article 202 would not be placed in danger of being declared either unconstitutional or completely ineffective. Furthermore, if the State’s interpretation of the law were held to be correct, the defendant would not be denied the equal protection of the law because the article would be universal in its application and relate to defects in the manner of selecting or drawing as well as any and all other irregularities in the composition of the grand jury, without regard to race, color or any other arbitrary condition or distinction that would be discriminatory.
 

 It is said, if Article 202 is construed by the Court to mean that a defendant has until three judicial days after the expiration of the term of the jury to file such objections and pleas to the drawing and selecting of the jury, the venire or panel, that when the article is applied to petit juries, absurd results would follow. In short, that the accused would have three days after the expiration of the petit jury term within which to attack the petit jury or venire, although that particular petit jury or venire had gone out of legal existence by the expiration of the term. This argument is not sound because it fails to take into consideration the latter part of Article 202, which requires the defendant to file such objections and pleas before the trial begins, as is also required by the provisions of Articles 253 and 287 of the Code of Criminal Procedure. The accused would have no interest in attacking the validity, of the composition of the petit jury or venire during a term whén he was not tried. His interest in the validity of the' drawing and selecting of the petit jury or venire is confined to the jury before whose members he will be tried. If in a previous term of the petit jury, the petit jury and the venire were illegally composed, a defendant who was not put on trial before that jury, would have no interest in attacking the drawing and selecting of it. If he were put on trial during a subsequent term of a petit jury, he would likewise have the right to attack the validity of the composition of that petit jury and venire until such time as he was placed on trial. Consequently, the fact that the first part of the Article gives him three judicial days after the jury term within which to attack the validity of the drawing and selecting of the jury or venire becomes an immaterial circumstance, which does not in any way adversely affect either the rights of the-State or the accused or cause any prejudice- or harm to the assertion of their respective-rights. It is obvious that under the construction placed upon the statute by the State, the defendant is granted more time-within which to file such pleas and objections then he would be entitled to under
 
 *53
 
 the interpretation contended for by the defendant. On the other hand, as we have already pointed out, if Article 202 is interpreted to mean the first three judicial days from the drawing of the grand jury, the .grand jury, the district attorney, the trial court, as well as this the Court of last resort, become involved in impossible situations that lead to absurd consequences and endangers the constitutionality of Article 202- or renders its provisions totally ineffective.
 

 It is our opinion that the Legislature intended to allow an accused indicted for a crime to file a motion to quash the indictment and the grand jury venire and panel for any irregularity or defect in drawing or selecting the jury, jury venire, panel and array until three judicial days after the expiration of the term of the grand jury, which returned the indictment, have elapsed, or before entering the trial of the case in the event the trial is started sooner. As the former delay or period of time elapsed on September 11, 1942, and the defendant did not file his motion to quash until October 23, 1942, the judge properly refused to consider the merits of his motion, on the ground that it was filed too late or not in accordance with the provisions of Article 202 of the Code of Criminal Procedure.
 

 The defendant makes the point that the court did not appoint Rudolph F. Becker, Jr., Esq., as his counsel until September 25, 1942, which was subsequent to the expiration of the time limit of September 11, 1942, within which time such motion to quash could have been filed and, consequently, his attorney could not do an impossible thing.
 

 The trial judge points out and the minutes of the court show that the indictment was filed in open court on August 20, 1942, that the defendant was arraigned on August 26, 1942, and, through his counsel, Henry Read, pleaded not guilty. He also had the benefit of the services of Attorney Alcide J. Weysham, who remained as his counsel throughout the trial. Neither Read nor Weysham filed any motion to quash the indictment or the grand jury venire and panel. Although Becker was appointed on September 25, 1942, he did not file the motion to quash until October 23, 1942. No reason whatsoever is assigned why the motion to quash was not filed timely or sooner. It is not claimed that the alleged irregularity or defect was recently discovered. Defendant, long before the expiration of the delay, had two attorneys representing him. They permitted the prescriptive period to elapse without filing the plea. One of them remained as his counsel throughout the trial. The defendant cannot by engaging other counsel or having the court appoint an additional attorney to represent him thereby gain any greater delay to file such a plea than any other accused who is represented by counsel. Having failed to file the motion to quash within the time provided for by Article 202 of the Code of Criminal Procedure, under its express provisions, such objections shall be considered as waived and shall not afterwards be urged or heard. The defendant’s attorneys Read and Weysham had from August 20, 1942 or August 26, 1942 until September 11, 1942 to file a
 
 *55
 
 motion to quash. This was more than a reasonable time to do so, and having failed to file the- motion timely and seasonably, the trial court properly refused to consider the merits of it.
 

 Although, in the defendant’s brief, his counsel make statements apparently conceding that Article-202 of the Code of Criminal Procedure applies to motions to quash the grand jury venire because of irregularities and illegalities, in oral argument, some doubt was expressed on the ground that the article only covered motions to quash the petit j'ury or venires. It will be noted that the 'article expressly refers to any juror or jury, any array or venire. The grand jury venire and .the petit jury venire in the Parish of Orleans are both drawn from the same general array. Articles 195, 196, Code of Criminal Procedure. These articles are found in the Criminal Code in that part dealing with the drawing and summoning of juries -generally and nothing is said in Article 202 which would confine its provisions to a petit jury or petit jury venires. From the authorities which we have already cited, it appears that this Court has considered this article and Act No. 44 of 1877, a similar statute, applicable in passing upon motions to quash indictments for irregularities in the selecting and drawing of grand juries.
 

 It is our view that Bill of Exception No. 1 under which all of the foregoing contentions were made, is without merit.
 

 Bill of Exception No. 2 was. reserved when the trial court overruled the defendant’s attorneys’ objection to the judge asking a State witness a question after the defendant’s counsel had cross-examined him. This witness, Detective Thomas. Whalen, on cross-examination, stated that the prosecuting witness had told him that the man who attacked her was a. negro.. The defendant’s counsel then said: “No further questions.” 'Thereupon, the Court started to ask the witness a question as follows: “In telling you that the man who-attacked her was a negro — ”. At this-point, the defendant’s attorney interrupted him, stating: “If your Honor please, I object to your Honor questioning the witness further, on the ground that it will amount to a comment on the evidence.”’ Then the Court said: “I understand. I don’t have any desire to comment on the evidence. The jury will, áppreciate my question and the witness’ answer, and you have a right to object to my question — Q. In telling you that the man who attacked her was a negro, did she clear that up by saying whether he was a black negro, or a white negro or a middle of the road negro?” Counsel renewed his objection and the court overruled it and a bill of exception was reserved. The witness then answered the question — “A. She said he was, a very light brown skin negro and that the-odor of -him proved to her that he was a negro.”-
 

 Prior to the time that Detective Thomas Whalen took the stand, the prosecuting witness, Mrs. Crawford, had testified on direct, cross, and re-direct examinations that the man who had attacked her was a light complexioned negro; and that she had had an opportunity to observe his face because of the bright street lights at the
 
 *57
 
 comer of Belfast Street and Carrollton Avenue, where he first grabbed her by the throat. She also testified that she had described her assailant as a light complexioned negro to the police and identified him in the show-up room after his arrest. Her identification was corroborated by the testimony of Mr. Friedman, who responded to the woman’s cries for help and shot the negro over the right eye with a revolver, the testimony of the doctor who treated the defendant at the Marine Hospital and the X-ray pictures taken of his injury, as well as by the defendant’s clothes, which were identified by his father-in-law, mother-in-law and sister-in-law.
 

 It is obvious that counsel endeavored to have Detective Whalen’s statement— that she said the man who attacked her was a negro — stand unexplained because it would then tend to contradict what the prosecuting witness had said and, in order to give the detective an opportunity to explain what the woman had told him, the judge asked the question. The court had the right to ask the question and it will be observed that even before the judge asked the question counsel objected on the ground that it would amount to a comment on the evidence. The judge then assured counsel that he had no intention of commenting upon the evidence as would appear from the question that he would ask and the witness’ answer. A reading of the entire testimony of this witness together with the testimony of Mrs. Crawford, the prosecuting witness, and particularly pages 49 through 164 and 97 through 120 of the transcript, inclusive, shows that the judge did not in any way comment upon the evidence.
 

 Bill of Exception No. 2 is, therefore, likewise without merit.
 

 Bill of Exception No. 3 is based upon the trial court’s action in overruling the motion for a new trial which reiterates the errors complained of in Bills of Exception Nos. 1 and 2. As these two bills have hereinabove been fully discussed and answered, Bill of Exception No. 3 presents nothing new for consideration.
 

 This case was tried before the Criminal District Court of the Parish of Orleans (Section “E”), where the testimony of all of the witnesses is taken down in short hand and transcribed by a .stenographer.
 

 Since this is a capital case, we have carefully read the entire record and find no error patent on the face thereof. On the contrary, it appears that the defendant received a fair and impartial trial before an impartial judge and jury and had the benefit and assistance of able and experienced attorneys. The lay and medical testimony, as well as the other evidence in the case, shows beyond any doubt that Mrs. Crawford, a young white woman and trained nurse, was brutally choked and ravished. The State’s proof leaves no doubt that the accused was the person who committed the crime and it was so complete that the defendant did not offer any countervailing testimony or evidence whatsoever. Besides the Bills of Exceptions which we have already discussed, the defendant did not reserve any others and the record reveals that on a number of
 
 *59
 
 occasions the court maintained his objections in excluding certain testimony.
 

 The defendant in his motion for a new trial does not complain that he was prejudiced in any respect except as recited in the three bills of exception. He does not state that he did not receive a fair and. impartial trial. The motion for a new trial was properly overruled. A careful reading and analysis of the testimony and consideration of the evidence in this case reveals that the jury’s verdict was justified.
 

 For the reasons assigned, it is ordered, adjudged and decreed that the verdict of the jury and the sentence of the court are affirmed.
 

 O’NIELL, C. J., dissents and' hands down reasons.