## FRANCIS *v.* HENDERSON, WARDEN

No. 74–5808.  Argued December 9–10, 1975—
Decided May 3, 1976

STEWART, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. BRENNAN, J., filed a dissenting opinion, *post*, p. 542.  MARSHALL, J., took no part in the decision of the case.  STEVENS, J., took no part in the consideration or decision of the case.

*Bruce S. Rogow,* by appointment of the Court, 421 U. S. 1009, argued the cause for petitioner. With him on the brief was *Louis Jepeway, Jr.*

*Barbara Rutledge,* Assistant Attorney General of Louisiana, argued the cause for respondent. With her on the brief were *William J. Guste, Jr.,* Attorney General, *Harry F. Connick,* and *Louise Korns.*

MR. JUSTICE STEWART delivered the opinion of the Court.

In *Davis* v. *United States,* 411 U. S. 233, the Court held that a federal prisoner who had failed to make a timely challenge to the allegedly unconstitutional composition of the grand jury that indicted him could not after his conviction attack the grand jury's composition in an action for collateral relief under 28 U. S. C. § 2255. The question in this case is whether a state prisoner who failed to make a timely challenge to the composition of the grand jury that indicted him could after his conviction bring that challenge in a federal habeas corpus proceeding.

The petitioner, Abraham Francis, was brought to trial in a Louisiana court in 1965 upon an indictment for felony murder. He was represented by counsel provided by the State. The Louisiana law then in force clearly required that any objection by a defendant to the composition of the grand jury that had indicted him had to be made in advance of his trial. Otherwise, the law provided, "all such objections shall be considered as waived and shall not afterwards be urged or heard." [1] No such

---

[1] At the time of Francis' trial Art. 202 of the Louisiana Code of Criminal Procedure (1928) required that all objections to a grand jury must be raised before the expiration of the third judicial day following the end of the grand jury's term or before trial, whichever was earlier. *State* v. *Wilson,* 204 La. 24, 14 So. 2d 873; *State* v. *Chianelli,* 226 La. 552, 76 So. 2d 727. See *Michel* v. *Louisiana,* 350

objection in any form was made by or on behalf of Francis. At the ensuing trial the jury found Francis guilty, and he was sentenced to life imprisonment.

He did not appeal the conviction, but in 1971 he sought collateral relief from a state court on the ground, *inter alia*, that Negroes had been excluded from the grand jury that had indicted him. The court held that Francis had waived this claim when he failed to raise it before trial as required by state law, and it accordingly denied relief. Francis thereafter sought a writ of habeas corpus in the United States District Court for the Eastern District of Louisiana. The District Court granted the writ on the ground that Negroes had been impermissibly excluded from the grand jury that had returned the indictment.[2] The Court of Appeals reversed the judgment, holding that in the light of this Court's decision in the *Davis* case, "the Louisiana waiver provision must be given effect by the federal district courts unless there is a showing of actual prejudice." 496 F. 2d 896, 899. Accordingly, the appellate court remanded the case to the District Court. We granted certiorari in order to consider a recurring and unresolved question of federal law. 421 U. S. 946.[3]

There can be no question of a federal district court's power to entertain an application for a writ of habeas corpus in a case such as this. 28 U. S. C. §§ 2241, 2254. The issue, as in the *Davis* case, goes rather to the appro-

---

U. S. 91. Louisiana now requires such objections to be made three judicial days prior to trial (or at any time prior to trial if permission of the court is obtained). La. Code Crim. Proc. Ann. Art. 535 (B) (3) (1967).

[2] While Negroes did serve on that grand jury, the District Court held that the practice the State followed at that time of excluding daily wage earners from grand jury service operated to exclude a disproportionate number of Negroes.

[3] This question has been explicitly left open in previous cases. See *Davis* v. *United States*, 411 U. S. 233, 242–243; *Parker* v. *North Carolina*, 397 U. S. 790, 798.

priate exercise of that power. This Court has long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forgo the exercise of its habeas corpus power. See *Fay* v. *Noia,* 372 U. S. 391, 425–426. The question to be decided is whether the circumstances of this case are such as to invoke the application of those considerations and concerns.

In *Davis, supra,* the petitioner was indicted by a federal grand jury upon a charge of attempted bank robbery. Federal Rule Crim. Proc. 12 provides that a defendant in a federal criminal case who wants to challenge the constitutional validity of the grand jury that indicted him must do so by motion before trial; otherwise he is deemed to have waived such a challenge, except for "cause shown."[4] Davis made no such motion. Almost three years after his trial and conviction, Davis brought a proceeding under 28 U. S. C. § 2255 to set aside his conviction upon the ground of unconstitutional discrimination in the composition of the grand jury that had returned the indictment against him. In holding that § 2255 relief should under these circumstances be denied, the Court said:

> "We think it inconceivable that Congress, having in the criminal proceeding foreclosed the raising of a claim such as this after the commencement of trial in the absence of a showing of 'cause' for relief from waiver, nonetheless intended to perversely negate the Rule's purpose by permitting an entirely different but much more liberal requirement of waiver in federal habeas proceedings. We believe that the necessary effect of the congressional adoption of Rule 12 (b)(2) is to provide that a claim

---

[4] Before.December 1, 1975, this requirement was embodied in paragraph (b)(2) of Rule 12. It is now contained in paragraphs (b)(2) and (f) of that Rule.

once waived pursuant to that Rule may not later be resurrected, either in the criminal proceedings or in federal habeas, in the absence of the showing of 'cause' which that Rule requires. We therefore hold that the waiver standard expressed in Rule 12 (b) (2) governs an untimely claim of grand jury discrimination, not only during the criminal proceeding, but also later on collateral review." 411 U. S., at 242.

See also *Shotwell Mfg. Co.* v. *United States,* 371 U. S. 341, 361–364.

As the Court in *Davis* pointed out, a time requirement such as that contained in Rule 12 serves interests far more significant than mere judicial convenience:

"The waiver provisions of Rule 12 (b) (2) are operative only with respect to claims of defects in the institution of criminal proceedings. If its time limits are followed, inquiry into an alleged defect may be concluded and, if necessary, cured before the court, the witnesses, and the parties have gone to the burden and expense of a trial. If defendants were allowed to flout its time limitations, on the other hand, there would be little incentive to comply with its terms when a successful attack might simply result in a new indictment prior to trial. Strong tactical considerations would militate in favor of delaying the raising of the claim in hopes of an acquittal, with the thought that if those hopes did not materialize, the claim could be used to upset an otherwise valid conviction at a time when reprosecution might well be difficult." 411 U. S., at 241.

The Louisiana time limitation applicable in the present case was obviously designed to serve precisely these same important purposes, as the Court specifically recognized more than 20 years ago in a case involving this

very Louisiana law, *Michel* v. *Louisiana*, 350 U. S. 91. There the Court said:

> "It is beyond question that under the Due Process Clause of the Fourteenth Amendment Louisiana may attach reasonable time limitations to the assertion of federal constitutional rights. More particularly, the State may require prompt assertion of the right to challenge discriminatory practices in the make-up of a grand jury." *Id.*, at 97 (footnote omitted).

> "Not only may the prompt determination of such preliminary matters avoid the necessity of a second trial, but a long delay in its determination, such as here, makes it extremely difficult in this class of case for the State to overcome the prima facie claim which may be established by a defendant. Material witnesses and grand jurors may die or leave the jurisdiction, and memories as to intent or specific practices relating to the selection of a particular grand jury may lose their sharpness. Furthermore, a successful attack on a grand jury that sat several years earlier may affect other convictions based on indictments returned by the same grand jury." *Id.*, at 98 n. 5.

If, as *Davis* held, the federal courts must give effect to these important and legitimate concerns in § 2255 proceedings, then surely considerations of comity and federalism require that they give no less effect to the same clear interests when asked to overturn state criminal convictions. Those considerations require that recognition be given "to the legitimate interests of both State and National Governments, and . . . [that] the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always [endeavor] to do so in ways that will not unduly

interfere with the legitimate activities of the States." *Younger* v. *Harris*, 401 U. S. 37, 44. "Plainly the interest in finality is the same with regard to both federal and state prisoners. . . . There is no reason to . . . give greater preclusive effect to procedural defaults by federal defendants than to similar defaults by state defendants. To hold otherwise would reflect an anomalous and erroneous view of federal-state relations." *Kaufman* v. *United States*, 394 U. S. 217, 228.

We conclude, therefore, that the Court of Appeals was correct in holding that the rule of *Davis* v. *United States* applies with equal force when a federal court is asked in a habeas corpus proceeding to overturn a state-court conviction because of an allegedly unconstitutional grand jury indictment.[5] In a collateral attack upon a conviction that rule requires, contrary to the petitioner's assertion, not only a showing of "cause" for the defendant's failure to challenge the composition of the grand jury before trial, but also a showing of actual prejudice.[6] Accordingly, the judgment is affirmed.

*It is so ordered.*

MR. JUSTICE MARSHALL took no part in the decision of this case. MR. JUSTICE STEVENS took no part in the consideration or decision of this case.

MR. JUSTICE BRENNAN, dissenting.

I dissent. *Fay* v. *Noia*, 372 U. S. 391 (1963), was a

---

[5] In a case where the state courts have declined to impose a waiver but have considered the merits of the prisoner's claim, different considerations would, of course, be applicable. See *Lefkowitz* v. *Newsome*, 420 U. S. 283.

[6] See *Davis* v. *United States*, 411 U. S., at 244–245. "The presumption of prejudice which supports the existence of the right is not inconsistent with a holding that actual prejudice must be shown in order to obtain relief from a statutorily provided waiver for failure to assert it in a timely manner." *Id.*, at 245.

decision attentive to this Court's solemn constitutional duty to preserve intact the sanctity of the Great Writ of habeas corpus and to ensure that "federal constitutional rights of personal liberty shall not be denied without the fullest opportunity for plenary federal judicial review," *id.,* at 424. The unjustified restriction imposed today on federal habeas jurisdiction betrays that promise.

We should call to mind what was said in *Fay. Fay* established the principle which was reaffirmed in *Henry* v. *Mississippi,* 379 U. S. 443, 452 (1965), and only last Term in *Lefkowitz* v. *Newsome,* 420 U. S. 283, 290 n. 6 (1975), that "even when state procedural grounds are adequate to bar direct review of a conviction in this Court, *federal habeas corpus relief is nonetheless available to litigate the defendant's constitutional claims unless there has been a deliberate bypass of the state procedures." Ibid.* (emphasis supplied); 372 U. S., at 428–434, 438–439. See also, *e. g., Camp* v. *Arkansas,* 404 U. S. 69 (1971). *Fay* acknowledged that "orderly criminal procedure is a desideratum, and of course there must be sanctions for the flouting of such procedure. But that state interest 'competes . . . against an ideal . . . [the] ideal of fair procedure.' " 372 U. S., at 431 (citation omitted). *Fay* rejected the legitimacy of a "state interest in an airtight system of forfeitures," *id.,* at 432, explicitly addressed the extent to which considerations of federalism should bar federal habeas corpus review, and determined that "deliberate bypass" was the equivalent of the "knowing and intelligent" waiver standard of *Johnson* v. *Zerbst,* 304 U. S. 458 (1938):

> "We fully grant . . . that the exigencies of federalism warrant a limitation whereby the federal judge has the discretion to deny relief to one who has *deliberately sought to subvert or evade* the orderly adjudication of his federal defenses in the state courts. *Surely no stricter rule is a realistic neces-*

*sity.* . . . [I]f because of inadvertence or neglect he runs afoul of a state procedural requirement, and thereby forfeits his state remedies, appellate and collateral, as well as direct review thereof in this Court, those consequences should be sufficient to vindicate the State's valid interest in orderly procedure. *Whatever residuum of state interest there may be under such circumstances is manifestly insufficient in the face of the federal policy, drawn from the ancient principles of the writ of habeas corpus, embodied both in the Federal Constitution and in the habeas corpus provisions of the Judicial Code, and consistently upheld by this Court, of affording an effective remedy for restraints contrary to the Constitution.*

. . . . .

"Although we hold that the jurisdiction of the federal courts on habeas corpus is not affected by procedural defaults incurred by the applicant during the state court proceedings, we recognize a *limited discretion* in the federal judge to deny relief to an applicant under certain circumstances . . . . Narrowly circumscribed, in conformity to the historical role of the writ of habeas corpus as an effective and imperative remedy for detentions contrary to fundamental law, the principle is unexceptionable. *We therefore hold that the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies.*

"But we wish to make very clear that this grant of discretion is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus. The *classic definition of waiver enunciated in Johnson* v. *Zerbst,* 304 U. S. 458, 464—'an intentional relinquishment or abandonment of a known right or

privilege'—*furnishes the controlling standard. If a habeas applicant,* after consultation with competent counsel or otherwise, *understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits*—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default. Cf. *Price* v. *Johnston,* 334 U. S. 266, 291. At all events we wish it clearly understood that *the standard here put forth depends on the considered choice of the petitioner. . . .* A choice made by counsel not participated in by the petitioner does not automatically bar relief. Nor does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question." 372 U. S., at 433–434, 438–439 (emphasis supplied).

Despite *Fay*'s unqualified holding that a state procedural default can bar federal habeas relief sought by a state prisoner who was denied fundamental constitutional rights *only* if the petitioner deliberately bypassed orderly state procedures, the Court now rejects that "deliberate bypass" standard in the context of a constitutional challenge to the composition of a grand jury.[1]

---

[1] Although the Fifth Amendment's provision for presentment or indictment by grand jury has not been extended against the States, *Hurtado* v. *California,* 110 U. S. 516, 538 (1884), a properly constituted grand jury is a fundamental constitutional right when the State proceeds by grand jury indictment.

"For over 90 years, it has been established that a criminal convic-

Since the Court neither addresses the applicability of *Fay* to this situation nor makes any effort to distinguish the failure to challenge the composition of a grand jury within the time limits specified by a State's procedural rules from such other situations involving fundamental rights as the failure to take a timely appeal, the failure to challenge in a timely manner the introduction of unconstitutionally seized evidence, or the failure to object to a prosecutor's comments on a defendant's failure to testify at trial, cf., *e. g., Fay; Kaufman* v. *United States,* 394 U. S. 217 (1969); *Camp* v. *Arkansas, supra,* this holding portends one of two inevitable consequences—either the overruling of *Fay* or the denigration of the right to a constitutionally composed grand jury.

If this case were an isolated instance of infidelity to the teaching of *Fay,* it might be seen as a simple aberration. But it is particularly distressing in light of decisions such as *Estelle* v. *Williams, ante,* p. 501, where the Court also exposes its hostility toward and makes substantial inroads into the precedential force of *Fay*

---

tion of a Negro cannot stand under the Equal Protection Clause of the Fourteenth Amendment if it is based on an indictment of a grand jury from which Negroes were excluded by reason of their race. *Strauder* v. *West Virginia,* 100 U. S. 303 (1880); *Neal* v. *Delaware,* 103 U. S. 370 (1881). Although a defendant has no right to demand that members of his race be included on the grand jury that indicts him, *Virginia* v. *Rives,* 100 U. S. 313 (1880), he is entitled to require that the State not deliberately and systematically deny to members of his race the right to participate as jurors in the administration of justice. *Ex parte Virginia,* 100 U. S. 339 (1880); *Gibson* v. *Mississippi,* 162 U. S. 565 (1896). Cf. *Hernandez* v. *Texas,* 347 U. S. 475 (1954)." *Alexander* v. *Louisiana,* 405 U. S. 625, 628–629 (1972). See also, *e. g., Peters* v. *Kiff,* 407 U. S. 493 (1972); *Sims* v. *Georgia,* 389 U. S. 404 (1967); *Whitus* v. *Georgia,* 385 U. S. 545 (1967); *Arnold* v. *North Carolina,* 376 U. S. 773 (1964); *Eubanks* v. *Louisiana,* 356 U. S. 584 (1958); *Smith* v. *Texas,* 311 U. S. 128 (1940).

without directly confronting its underlying premises, its continuing validity, or the possibility of distinguishing the failure to raise different constitutional rights in a timely manner in the state courts. Such "oversights" are especially ironical in light of the Court's recent admonition that "[o]ur institutional duty is to follow until changed the law as it now is, not as some members of the Court might wish it to be." *Hudgens* v. *NLRB,* 424 U. S. 507, 518 (1976). If the Court believes that *Fay* is no longer good law, and if the Court has the "institutional duty" to develop and explicate the law in a reasoned and consistent manner, then it has the duty to face squarely our prior cases interpreting the federal habeas statutes and honestly state the reasons, if any, for its altered perceptions of federal habeas jurisdiction. I, for one, do not relish the prospect of being informed several Terms from now that the Court overruled *Fay* this Term, cf., *e. g., Hudgens* v. *NLRB, supra,* when the Court never comes to grips with the constitutional and statutory principles and policy considerations underpinning that case. I adhere to the holding of *Fay* and our other precedents establishing that, absent a deliberate bypass of state procedures, a procedural default cannot justify the withholding of habeas relief from a state prisoner who was convicted in derogation of his constitutional rights; if the Court no longer shares that view, it is evident that it has an "institutional duty" to say so forthrightly and to explain why some other standard is to be applied in cases arising under 28 U. S. C. §§ 2241, 2254.

Today's opinion is notably deficient in that respect. After properly conceding that "[t]here can be no question of a federal district court's power to entertain an application for a writ of habeas corpus in a case such as this," *ante,* at 538, the Court notes that *Davis* v. *United States,* 411 U. S. 233 (1973), sustained Fed. Rule Crim.

Proc. 12 (b)(2), which requires a showing of "cause" before a *federal* defendant may interject an untimely challenge to the constitutional validity of the composition of the grand jury that indicted him. *Ante,* at 539–540. The Court then asserts that "considerations of comity and federalism require that [the federal courts] give no less effect to the same clear interests [deemed sufficient to sustain Rule 12 (b)(2) as a limitation on collateral proceedings under 28 U. S. C. § 2255]," *ante,* at 541, and that "the rule of *Davis* v. *United States* applies with equal force when a federal court is asked in a habeas corpus proceeding to overturn a state-court conviction because of an allegedly unconstitutional grand jury indictment." *Ante,* at 542. Finally, the Court concludes that applying the *Davis* rule with "equal force" means that petitioner must show not only "cause" for the untimely challenge, but also "actual prejudice" resulting from the failure to comply with the procedural rule. *Ibid.*

The defects in this analysis are glaring. As my Brother MARSHALL pointed out in dissent in *Davis,* see 411 U. S., at 245–257, there was no justifiable basis for the Court's holding there. I still concur in the reasoning of that dissent, and therefore I will not repeat those arguments here. But more fundamentally for purposes of this case, it must be emphasized that the decision in *Davis* was at least based on the notion that *Congress intended* that the availability of collateral relief for federal prisoners under § 2255 would be governed by the same rules it had determined would govern the availability of relief during the criminal proceeding itself. See 411 U. S., at 241–243.[2] I fail to comprehend how "con-

---

[2] Moreover, the Court has never fully addressed the constitutional dimensions of the waiver problem, and certainly failed to do so in *Davis.* "[W]aiver affecting federal rights is a federal question." *Fay* v. *Noia,* 372 U. S. 391, 439 (1963). If, as a matter of consti-

siderations of comity and federalism"—vague concepts
that are given no content by the Court—grant this Court
the power to circumscribe the scope of congressionally in-

---

tutional law, a substantive constitutional right (for example, the
right to counsel or the right to a speedy trial) may not be lost
unless it has been knowingly and intelligently waived by the de-
fendant, see, e. g., *Johnson* v. *Zerbst*, 304 U. S. 458, 464 (1938);
*Barker* v. *Wingo*, 407 U. S. 514, 525–529 (1972); *Schneckloth* v.
*Bustamonte*, 412 U. S. 218, 235–246, 276–277 (1973), it is difficult
to fathom how the existence *vel non* of a state procedural rule that
a claim to that right must be asserted at a particular time can in
any way dilute that constitutional waiver standard. For example,
if a State passed a rule that any defendant must claim indigency
upon arrest or be deemed to have waived his right to appointed
counsel, I do not see how we could legitimately conclude that the
substantive right was waived unless the defendant knew he had the
right to appointed counsel and knowingly and intelligently failed
to assert it. Similarly, even if we were to hold that a defendant
may be bound by certain actions of his counsel, it would seem that
counsel must be shown to have knowingly and intelligently acted
on his client's behalf. Cf. *Henry* v. *Mississippi*, 379 U. S. 443
(1965). This symmetry between waiver of the substantive right in
the absence of a procedural rule and forfeiture of that right by
failure to assert it in compliance with a State's procedural rule was
preserved in *Fay*, which adopted the analogue of the *Johnson* v.
*Zerbst* knowing-and-intelligent-waiver standard—the deliberate by-
pass standard—as the appropriate standard for measuring procedural
defaults. See 372 U. S., at 439. See also n. 4, *infra*.

Furthermore, I am puzzled by the Court's statement that "con-
siderations of comity and federalism *require*" that the rule of *Davis*
be applicable to federal habeas petitions brought by state prisoners.
*E. g., ante,* at 541 (emphasis supplied). It is one thing to say
that, for whatever unarticulated reason underlies today's decision,
federal courts as a discretionary matter should not remedy certain
unconstitutionally obtained convictions rendered by state courts.
However, since I do not understand that today's is a constitutional
decision, if Congress were legislatively to overrule it and require
habeas relief in these circumstances, plainly the Court could not
refuse to enforce the congressional mandate on the basis of its own
notions of "comity and federalism."

tended relief for *state* prisoners under 28 U. S. C. § 2254. Such considerations, in our federal system in which the federal courts are the ultimate arbiters of federal constitutional rights, at most justify the postponement, not the abnegation, of federal jurisdiction. *Fay* interpreted § 2254 in light of such factors as the limitations on this Court's certiorari jurisdiction, the policy that federal rights not be denied "without the fullest opportunity for plenary federal judicial review," the concern that States are often not sufficiently sensitive to the need to protect those rights, and the historical significance and role of the Great Writ, see 372 U. S., at 399–435, and concluded that the discretionary power of federal courts to deny habeas relief to state petitioners deprived of constitutional rights is confined to the narrow category of situations in which they can be said to have waived the right to have their claims adjudicated by the knowing, intelligent, and deliberate bypassing of orderly state procedures. *Id.,* at 438–439. "Surely no stricter rule is a realistic necessity." *Id.,* at 433. Yet the Court, invoking "comity and federalism," would now essentially preclude federal habeas relief for state defendants deprived of their constitutional rights, so long as the State requires that they assert those rights within a certain time period; this absolute and automatic "waiver" of the underlying constitutional claim would apparently take effect whether or not the defendant knew of his rights, whether or not the "untimely" challenge was nevertheless made at a time when no legitimate state interest would be upset by an adjudication of the claim on the merits, and whether or not mere inadvertence or actual incompetence of counsel accounted for the untimely challenge. It is difficult to conceive of a more pervasive repudiation of federal judicial responsibility to safeguard and preserve those precious rights to fair criminal process enshrined in the

Federal Constitution. No support for such a proposition may be gleaned from such cases cited by the Court as *Younger* v. *Harris,* 401 U. S. 37 (1971). *Ante,* at 541–542. That case, which applied a strictly cabined concept of "comity and federalism" that recognized that salutary considerations dictate that federal courts in some situations defer, *as an initial matter,* to state adjudication of federal claims (a concern which is reflected in the habeas statutes in the requirement that state defendants exhaust available state remedies before seeking federal habeas relief), is simply inapposite as support for a holding that state action denying an accused fundamental rights can be immunized from review by the unintentional failure to comply with a state procedural rule. It is, unfortunately, but yet another example of the Court's current trend loosing the principle of "comity and federalism" from its original moorings and converting a doctrine of *timing* of federal adjudication of constitutional claims into a doctrine essentially *precluding* such adjudication. See, *e. g., Rizzo* v. *Goode,* 423 U. S. 362 (1976); *Estelle* v. *Williams, ante,* p. 501. The increasingly talismanic use of the phrase "comity and federalism"—itself essentially devoid of content other than in the *Younger* sense of determining the timing of federal review—has ominous portent; it has the look of an excuse being fashioned by the Court for stripping federal courts of the jurisdiction properly conferred by Congress.

Moreover, even if the Court were to carve out an exception to *Fay* for waiver of the right to challenge the composition of grand juries on the ground that the rule of *Davis* v. *United States* should apply "with equal force" to proceedings under § 2254 as to those under § 2255, there is no basis for the Court's inexplicable conclusion that petitioner must show not only "cause" for the untimeliness of the challenge, but also "actual preju-

552

dice." *Ante*, at 542.[3] This *ipse dixit*, baldly asserted by the Court in its penultimate sentence without the slightest veneer of reasoning to shield the obvious fiat by which it has reached its result, hardly qualifies as judicial craftsmanship. It is, beyond peradventure, a sad disservice to the Court's obligation to elaborate on its rationales for arriving at a particular rule of law.

Indeed, the Court's apparent overruling of *Fay* at least for constitutional challenges to the composition of grand

---

[3] *Davis* v. *United States* does not support this holding. See *ante*, at 542 n. 6. *Davis*, in analyzing Rule 12 (b)(2), affirmed the District Court ruling that no "cause" for relief had been shown in light of the facts, *inter alia*, that the same method of grand jury selection had been employed for a number of years, that there were no racial overtones to the case, that the challenge was made three years after petitioner's conviction, and that the Government's case was strong. 411 U. S., at 235–236, 243–244. These factors, which were used in evaluating the existence of "cause," clearly are not all related to "prejudice." True, *Davis* also noted that the District Court had taken absence of prejudice into account in denying relief, and held that this was permissible. *Id.*, at 244. But plainly the existence of prejudice was deemed simply to be one means of demonstrating "cause" for relief. The Court thus addressed petitioner's contention that *Peters* v. *Kiff*, 407 U. S. 493 (1972), which held that prejudice is presumed in cases where racial discrimination is alleged in grand jury composition, mandated that sufficient prejudice was therefore demonstrated to establish "cause." The Court, in that context, made the statement quoted by the Court today, and concluded that although the unconstitutional composition of the grand jury alone would not justify relief, "actual prejudice" would be deemed sufficient to establish "cause" within the meaning of Rule 12 (b)(2). However, it was clear that in the absence of prejudice other factors could also establish "cause." Thus, *Davis* simply provides no support for the Court's implication in n. 6 that only "actual prejudice" justifies relief from a procedural default. Certainly the Court cannot be suggesting that the flexible "cause shown" standard of Rule 12 (b)(2) is now to be similarly contracted when federal judges exercise their discretion during the course of a trial or during collateral proceedings.

juries[4] and its unexplained imposition of an "actual prejudice" requirement on petitioner are particularly egregious in light of certain salient facts in this case,

[4] Today's decision may be read to stop short of overruling *Fay* across the board only if the Court is holding that the attachment of the consequence of "waiver" to the failure to make timely objections required by state law depends upon the constitutional right involved. That would, of course, comport with the Court's unfortunate trend of diluting the standards by which waiver of constitutional rights might be accomplished. See, *e. g., Schneckloth* v. *Bustamonte,* 412 U. S. 218 (1973). Many of the quotations in the Court's opinion would appear to indicate that the Court conceives of the State's interest in securing waivers of the right to a constitutionally composed grand jury as somehow different from its interest in securing the waiver of other constitutional rights. Perhaps there is some notion of "harmless error" underlying that belief. Whatever it is, the Court should articulate any perceived bases for such a differentiation. I cannot believe that the Court would allow States, merely by passing numerous procedural rules requiring objections at particular times, to eviscerate the "knowing and intelligent waiver" doctrine of *Johnson* v. *Zerbst,* 304 U. S. 458 (1938), with respect to such rights as the right to counsel and the right to a jury trial and a fair and impartial jury, or the requirement that the State prove every element of a crime by proof beyond a reasonable doubt. It may be, however, that the Court is rejecting *Fay's* principle that waiver of constitutional rights must ordinarily be made personally by the defendant. See *Estelle* v. *Williams, ante,* p. 513 (POWELL, J., concurring). But here again, the Court should address that issue and inform us what "trial-type" rights, if any, may be waived for an accused by his lawyer. Moreover, if the Court is embarking on a program of diluting *Fay* standards to bind the accused by waivers by counsel, some concrete content should be given the Sixth Amendment guarantee of effective assistance of counsel and some explanation made of what actually constitutes action "within the range of competence demanded of attorneys in criminal cases." *McMann* v. *Richardson,* 397 U. S. 759, 771 (1970); *Tollett* v. *Henderson,* 411 U. S. 258, 266 (1973); see *Davis,* 411 U. S., at 234 n. 1. Indeed, if defendants' constitutional rights are to be controlled by counsel's conduct, a more exacting scrutiny of counsel's conduct over the full course of the criminal process should be made.

facts which the Court studiously avoids noting. Petitioner, then a 17-year-old black youth, was indicted by the Orleans Parish grand jury on a charge of felony murder. That charge was brought when, during the course of a robbery of a white couple perpetrated by several black males, one of the alleged robbers was killed. This was apparently the first time that anyone could recall such a novel charge, under which the State sought the death penalty for the three indicted confederates of the deceased, being brought in Orleans Parish.

Two months later, the State appointed uncompensated counsel for petitioner. During the period before trial petitioner's counsel, who was in failing health and who had not practiced criminal law for several years, took essentially no action with respect to petitioner's defense. Not until the day before trial did counsel file any motions in this capital case, and it was only then that he filed such elementary motions as an application for a bill of particulars, a motion to quash the indictment on vagueness grounds, and a discovery motion seeking production of copies of the confessions petitioner had allegedly made to the police while he was still unrepresented. No challenge was made to the composition of the grand jury that had indicted petitioner, and petitioner was informed neither of the fact that such a challenge was possible nor of the fact that his counsel had not made such a challenge. On the day of petitioner's one-day trial, his motion to exclude the statements made to the police was denied without hearing. Petitioner was convicted of felony murder and sentenced to life imprisonment, while his two older accomplices, who after plea bargaining had pled guilty, each received 8-year prison terms.[5]

---

[5] Although there is some indication in the record that state law prohibited a guilty plea by a minor to a charge of manslaughter,

Although petitioner did not appeal his conviction, he pursued state collateral relief on the ground, *inter alia,* that he was unconstitutionally indicted because blacks had been disproportionately excluded from the grand jury that had indicted him. The state trial judge denied relief on the ground that petitioner had been represented by competent counsel, that counsel had considered but rejected the idea of challenging the grand jury array, and that the time limit for making such a challenge (under the Louisiana statute which held that any challenges not asserted in a timely fashion were automatically waived) had expired. After the Louisiana Supreme Court denied petitioner's combined petition for certiorari and writ of habeas corpus, he petitioned for a writ of habeas corpus in the United States District Court for the Eastern District of Louisiana.

That court granted the writ on the ground that the Orleans Parish grand jury, which had been chosen by the Orleans Parish Jury Commission intentionally and systematically to exclude daily wage earners, was unconstitutionally constituted in that it excluded a disproportionate number of blacks and was not an impartial jury representing a cross-section of the community. The court, relying on *Fay* v. *Noia,* 372 U. S. 391 (1963), and *Johnson* v. *Zerbst,* 304 U. S. 458 (1938), noted that although petitioner could not now raise his grand jury challenge in the state courts, there was no similar bar to federal habeas relief because petitioner had not intentionally relinquished or abandoned his constitutional

---

see App. 29, it appears in any event that the State was unwilling to plea-bargain with petitioner, see *ibid.:*

"Q. Was there any reason why this man didn't plead guilty to manslaughter, Francis?

"A. Sure, there is a reason, the State was out to put him in the electric chair."

rights or deliberately bypassed the state procedure for raising those rights. In response to the State's contention that this collateral challenge to the grand jury's composition was precluded by the then recent decision in *Davis* v. *United States, supra,* the District Court held that assuming, *arguendo,* that mere failure to raise an issue could constitute a waiver, there was sufficient "cause" shown—the standard upheld in sustaining Rule 12 (b)(2) in *Davis*—to justify relief in light of the course of conduct of petitioner's counsel.[6]

Given these facts, the Court's unexplained imposition of an "actual prejudice" requirement for collateral relief from the state procedural default looms even more oppressive. The District Court has found that the grand jury that indicted petitioner was unconstitutionally composed, and that petitioner neither knowingly and intelligently waived his right to a proper grand jury indictment nor deliberately bypassed the state procedures for adjudicating his federal allegations, thus meeting *Fay*'s prerequisites for habeas relief. Moreover, the District Court found that petitioner has shown sufficient "cause" for relief under the *Davis* test for relief from a procedural "waiver." This Court, recognizing that petitioner has overcome the hurdles of showing an unconstitution-

---

[6] The Court of Appeals vacated the relief even though it agreed that "cause" had been shown sufficient to satisfy the *Davis* test for collateral review of federal convictions in "that Francis had been represented by a civil lawyer, unskilled in the intricacies of criminal practice, who had, by his inexperience, allowed the time for challenging the indictment to pass without objecting to the grand jury's composition." 496 F. 2d 896, 897–898 (CA5 1974). The Court of Appeals held, in an opinion also devoid of analysis, that a State might base a finding of waiver of a federal constitutional claim on failure to object within the time prescribed by a state procedural rule, without more, and that a federal habeas court must give effect to that state requirement "absent a showing of actual prejudice by the habeas petitioner." *Id.,* at 897.

ally composed grand jury and "cause" for failure to protest that fact within the time dictated by state law, nevertheless erects the further hurdle of "actual prejudice" in petitioner's path; at a minimum, the Court owes petitioner *some* explanation for this additional burden.

Moreover, the Court, in addition to failing to supply any justifications for this requirement, fails to supply any content to it. One suspects that a habeas petitioner will never be able to demonstrate "actual" prejudice, if the Court intends by that to mean he must prove, by some standard, that he would *not in fact* have been indicted for a particular crime had the grand jury met constitutional standards. The Fifth Circuit's hypothetical for "actual prejudice" was a situation in which petitioner's coparticipants were white, and the unconstitutionally composed grand jury failed to indict them. Of course, such a clear situation will seldom eventuate, and it is difficult to see how petitioner, whose coparticipants were also black, could ever show such "actual prejudice."

It would seem that, at a minimum, if the Court were to impose any "prejudice" requirement, it should require the State, once the racial bias of the grand jury is shown, to demonstrate that the constitutional deprivation was harmless error in that petitioner would have, beyond any reasonable doubt, been indicted for the same offense by a constitutionally composed grand jury. Such a test would at least allow the clearly justifiable relief sought in this case. For a constitutionally constituted grand jury was of the utmost importance to petitioner. The facts concerning the crime were essentially undisputed, and the pivotal decision in this case was invocation of the felony murder doctrine in an extremely rare factual context laden with racial overtones. If there was any case in which a constitutionally composed grand jury could perform its "historic function" of determining

whether petitioner should be so peculiarly indicted for this particular crime, see, *e. g.,* *United States* v. *Calandra,* 414 U. S. 338, 342–344 (1974), and especially of determining whether the interests of society would best be served by prosecuting, for reasons of his specific conduct, a "terrified" youth of 17 for a crime carrying the sanction of capital punishment, this was such a case. It is simply incomprehensible that this Court would suggest that habeas relief for deprivation of *federally* secured rights under these circumstances is inappropriate because of principles of "comity and federalism."

I would reverse the Court of Appeals and remand with direction to reinstate the order of the District Court dated September 20, 1973, modified however to postpone execution of the writ and release of the petitioner to afford the State a specified time from the date of the entry of the reinstated order within which to indict and try the petitioner.