**56**

Melvin WRIGHT, Petitioner,

v.

Roy F. BOMBARD, Superintendent,
Greenhaven Correctional Facility,
Respondent.

No. 79 Civ. 1032.

United States District Court,
S. D. New York.

June 19, 1979.

Eleanor Jackson Piel, New York City, for petitioner.

Robert Abrams, Atty. Gen., New York City, for respondent; Gale D. Berg, Deputy Asst. Atty. Gen., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Petitioner, presently serving an indeterminate sentence of six years to eighteen years at the Greenhaven Correctional Facility following his conviction of manslaughter in the first degree after a jury trial in the Supreme Court, New York County, seeks his release upon a federal writ of habeas corpus. He contends that the judgment of conviction is constitutionally void for violation of his Fifth Amendment right against self-incrimination because of the introduction in evidence upon his trial of a question and answer statement taken from him following his arrest. The basis of the claim is that he did not understand the *Miranda* warnings because he was inebriated and in fear of his life by reason of threats made to him by police officers and that no fact-finding hearing was held on that issue.

Prior to the offer of the statement, defendant's counsel conducted a voir dire ex-

amination of the reporter who had taken and transcribed it. The reporter testified that while petitioner looked as if he had been drinking, he was conscious and rational during the questioning. Petitioner's trial attorney objected to the admission of the statement on the ground that petitioner was unable to comprehend the *Miranda* warnings. The Court did not then rule on the objection but questioned the reporter: "When you said he gave the appearance of drinking, would you say he was drunk?" When the witness responded in the negative, the statement was admitted and no objection was noted.

Although the defendant was indicted for murder, the jury returned a verdict of manslaughter in the first degree. A word-by-word reading of the entire transcript indicates there was substantial evidence to support the verdict. On January 3, 1973, at about 4:00 a. m., the petitioner and the deceased had an argument at the Moonlight Bar and Grill, New York City, which led to a fistfight. Petitioner struck Walker, the deceased, knocking him down, then left the bar and soon returned with a machete, wrapped in newspaper, which he swung at the deceased but missed him, and it fell from petitioner's hand to the floor and was picked up by the barmaid, who placed it behind the bar. The deceased, who it appears was intoxicated, was struck and knocked down by the petitioner and they grappled on the floor. The barmaid and another witness who observed them scuffling saw blood spurt from the deceased; · blood was on the floor. Neither witness, however, could say that he or she actually saw petitioner holding a knife or stab the deceased. The State also offered evidence that petitioner and another man dragged the deceased out of the bar and dropped him on the sidewalk, where he soon died. The day after the event, the petitioner left for the Bahamas and returned two weeks later. Soon thereafter petitioner telephoned the bartender of the bar where the homicide occurred and threatened to get his gun and kill witnesses who he heard were talking about him. On a subsequent occasion he told the owner he was there to explain what he had done, stating, "I hate to do it, I hate to do it." [1]

On February 3, 1973, following petitioner's arrest, he gave the statement which is the subject of this application. The statement was exculpatory; the petitioner repeatedly denied he had committed the homicide. However, it also had references to a sexual episode after leaving the bar, evidently intended as an alibi, although he refused to give the female's name because of alleged concern for her safety since she was his friend's "woman."

The petitioner did not testify. The only witness called by him was his wife who testified that she called him in the Bahamas to inform him that she had heard that a man had been found dead outside the Moonlight Bar; that the police had come by the house and that they supposedly had a warrant for his arrest; that petitioner said that since he had paid for his hotel room for two weeks, he planned to stay there for that period; further, that he knew nothing about the killing. The main thrust of summation by petitioner's counsel was reasonable doubt of guilt.

Upon appeal the judgment of conviction was affirmed without opinion and leave to appeal to the Court of Appeals was denied. An application for a writ of certiorari to the United States Supreme Court was also denied.

Thereafter a habeas corpus proceeding was instituted in this Court before Judge Whitman Knapp, who dismissed the petition for failure to exhaust state remedies on the issue of the voluntariness of the statement. Subsequently, petitioner instituted a coram nobis proceeding in the New York State Supreme Court pursuant to New York Criminal Procedure Law (CPL), section 440.10(1)(h). In that proceeding, petitioner sought to vacate the judgment of conviction on the constitutional grounds here advanced. The Court denied the motion for petitioner's "unjustifiable failure to

---

1. R. 137. The prosecutor in summation quoted the testimony as "I had to do it." [R. 357]

raise such ground or issue upon [the] appeal actually perfected by him" as required by New York state law.[2] The Court observed that had petitioner's constitutional claim been advanced on appeal, the Appellate Division would have had an opportunity to review the issue and possibly remit the case for a *Huntley* hearing, and concluded that "[a] motion to vacate a judgment under [section 440.10] 'may not be used as a vehicle for an additional appeal or a belated motion for a new trial.' (*People v. Shapiro*, 3 N.Y.2d 203, 206, 165 N.Y.S.2d 14, 144 N.E.2d 12)." Thereafter, a Justice of the Appellate Division denied a certificate for leave to appeal pursuant to CPL, section 460.15. Petitioner then filed the instant petition. It is conceded that petitioner has exhausted available state remedies as required by 28 U.S.C., section 2254(b) and (c).

The issue presented is whether petitioner's failure to request a *Huntley* hearing[3] on the issue of the voluntariness of the statement either before the trial when he was advised the State intended to offer it at the trial,[4] or to request such a hearing when his objection to its admission had been overruled, and his further failure upon his direct appeal from the judgment of conviction to present his federal constitutional claim with respect thereto, as required by section 440.10, constituted a waiver so as to bar federal habeas corpus review.

In *Wainwright v. Sykes*,[5] which involved a claim of inadmissibility of petitioner's confession by reason of his asserted lack of understanding of the *Miranda* warnings, the Supreme Court held that under Florida state procedure it was required that the confession be challenged at trial or not at all and that his failure timely to object to its admission amounted to an independent and adequate procedural ground which prevented review by way of federal habeas corpus. The Court in its ruling applied the doctrine previously enunciated in *Francis v. Henderson*[6] that in a collateral constitutional attack upon a state court judgment of conviction the petitioner must not only show cause for failure to comply with the state's procedural requirement, but also establish actual prejudice. Here petitioner's counsel did object when the statement was first offered upon the bare assertion that "even though the statement provides for

---

**2.** N.Y.Crim.Proc. Law § 440.10 provides:

 Motion to vacate judgment

 1. At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that:

 . . . . .

 (h) The judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States.

 2. Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when:

 . . . . .

 (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

**3.** *People v. Huntley*, 15 N.Y.2d 72, 255 N.Y.2d 838, 204 N.E.2d 179 (1965); *see Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

**4.** N.Y.Crim.Proc. Law § 710.30(1) requires the prosecution to notify the defendant of its intention to offer the statement at trial. Robert M. Kelly, the Assistant District Attorney who tried petitioner's case, submitted an affidavit in the state coram nobis proceeding stating that he had given a copy of petitioner's statement to defense counsel prior to trial and notified him of the prosecution's intent to offer it into evidence. Nonetheless, no pre-trial motion to suppress, as required by N.Y.Crim.Proc. Law § 710.40(1), was made. Petitioner contends here "on information and belief" that no *written* notice was provided by the prosecution; no affidavit of trial counsel is offered on this point. Even crediting this assertion, petitioner was required to raise this specific objection at trial and request a *Huntley* hearing. *See People v. Ross*, 21 N.Y.2d 258, 262, 287 N.Y.S.2d 376, 379, 234 N.E.2d 427, 430 (1967).

**5.** 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

**6.** 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976).

adequate *Miranda* warnings . . . the defendant was unable to comprehend these warnings"; but when the reporter thereafter testified that petitioner appeared rational and was not drunk, the statement was admitted into evidence without objection. There was not the slightest evidential support for the assertion by petitioner's counsel that petitioner was unable to "comprehend" the *Miranda* warnings. Not only was the objection not renewed when the Court admitted the statement in evidence, but no request was then made for a hearing on voluntariness or to suppress the statement, nor had any been made in advance of trial.[7]

Upon direct appeal to the Appellate Division, the sole contention with respect to the statement was that it was reversible error to admit it into evidence because it showed "appellant's bad character in that appellant never put his character into evidence." No contention was made with respect to any alleged constitutional infirmity; no claim was advanced as to the voluntariness of the statement or the failure to conduct any hearing on the issue.

The instant record is barren of any explanation or reason why petitioner's constitutional claim was not raised upon his direct appeal. Clearly there was an "unjustifiable failure to raise such ground or issue upon an appeal perfected by him." There is no statement from trial counsel, who also represented petitioner on the direct appeal, as to the failure to present it to the Appellate Division. Petitioner does state that if his attorney "should have asked for a hearing and did not do so, then my right to a fair trial and competent counsel was compromised." But this does not explain the failure to present the issue upon direct appeal. To the extent that by the foregoing peti-

tioner suggests inadequacy of counsel, if such is to be the basis of a constitutional attack upon the judgment of conviction, it will have to be articulated in a proper petition and proceeding.

Additionally, petitioner has shown no prejudice. As already noted, the statement was entirely exculpatory. Petitioner categorically and repeatedly denied the participation in the homicide. He said he had left the bar before the killing and did not return. He denied he had stabbed Walker or anyone at the bar; that he had seen anyone there with a knife or machete. He stated that he did not know there had been a stabbing before he went to the Bahamas; that he learned of it when his wife called him there and told him the police were looking for him, but he decided to remain in the Bahamas for several weeks since he had already paid for the trip; that upon his return to New York City he voluntarily turned himself in because the police were harassing his family; that those who said he had been in a fight and stabbed a man at the bar were lying, and he denied he ever possessed a weapon. Thus, petitioner, without taking the witness stand and subjecting himself to cross-examination, was able to get before the jury his denial of the testimony of the State's witnesses. If anything, the statement was to his advantage rather than to his prejudice.[8] Indeed it may not be amiss to suggest that this is the type of "sandbagging" referred to by the Supreme Court in *Wainwright*.[9] Upon the entire record, petitioner has failed to make a showing of "cause" or "prejudice" and his noncompliance with CPL, section 440.10 bars federal habeas review of his conviction.

The petition is dismissed.

---

7. N.Y.Crim.Proc. Law § 710.70(3) provides:

   A motion to suppress evidence made pursuant to this article is the exclusive method of challenging the admissibility of evidence upon the grounds specified in section 710.20, and a defendant who does not make such a motion before or in the course of a criminal action waives his right to judicial determination of any such contention.

8. That the statement was not deemed of major importance is perhaps demonstrated by the

fact that the brief on appeal in arguing that it was reversible error to admit it, because it showed appellant's bad character, concluded "[n]otwithstanding the fact that this error taken alone may not be of a serious enough nature to warrant a reversal taken together with all of the other errors committed the cumulative effect amounts to substantial, reversible error." Appellant's Brief at 32.

9. 433 U.S. at 89, 97 S.Ct. 2497.