**Robert CARTER, Petitioner,**

v.

**Charles SCULLY, Superintendent, Green Haven Correctional Facility, Respondent.**

**No. 81 Civ. 4633 (RWS).**

United States District Court, S.D. New York.

March 8, 1982.

Gerald Zuckerman, New York City, for petitioner.

Mario Merola, Dist. Atty. for Bronx County, New York City, for respondent; Kevin B. Hurley, Asst. Dist. Atty., New York City, of counsel.

## OPINION

SWEET, District Judge.

Petitioner Robert Carter ("Carter") seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, to set aside a judgment of conviction upon charges of murder in the second degree, assault in the first degree and possession of a weapon as a felony, entered by Honorable William Kapelman, after a jury trial on March 4–15, 1974. There being no factual issue presented, a hearing on the petition was held on December 4, 1981. For the reasons set forth below, Carter's petition is denied.

Carter's conviction was unanimously affirmed without opinion on May 22, 1980, by the Appellate Division, First Department of the New York State Supreme Court. Leave to appeal to the New York Court of Appeals was subsequently denied and Carter is presently serving his sentence of concurrent terms of twenty years to life, and up to five and ten years on the three counts.

Carter claims first, that the identification by Hubren Davis ("Davis"), the only eyewitness, was irreparably tainted by an impermissibly suggestive photo show-up, and second, that a reference to "mug shots" by a witness prejudiced the jury beyond the repair of a curative instruction. Carter raised the first claim at a pretrial _Wade_[1] hearing, at which time the trial judge ruled that the eyewitness identification was admissible.

Davis testified that he left his apartment when Carter and Benny Kelly ("Kelly"), an acquaintance of Davis and an unknown

---

1. The Supreme Court sought to guard against "suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification" in _United States v. Wade_, 388 U.S. 218, 228, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149 (1967).

male, arrived at his door, that he returned approximately ten minutes later to find them handling drugs, and that after Kelly put the drugs into two plastic bags, the unknown male demanded both bags, then shot Kelly and ordered Davis to lie on the floor, a position from which he could see the assailant search the apartment and Kelly's body, after which he shot Davis in the neck and left the apartment. At the trial Davis identified Carter as the unknown male. Acquaintances of both Carter and Kelly placed the two together earlier on the night of the murder.

Carter now contests the outcome of the *Wade* hearing, which permitted the in court identification. Davis testified that he had never seen the assailant before the night of the murder. The investigating officer, Detective Hallinan ("Hallinan"), testified that on the morning after the shooting he showed Davis, then in the hospital, a single color photograph of Carter, to which Davis responded "Yes, he's the dude that shot Benny and me." At the *Wade* hearing and at trial, Davis did not recall being shown a single photograph. In addition, Davis acknowledged that he had been addicted to heroin, although the record is unclear about whether and for how long he had been off the drug before he was shot. Carter contends that all subsequent identifications, including a photo line-up and an in-court identification, were irreparably tainted by the photo show-up and that the in-court identification should have been suppressed.

The Supreme Court has recognized that in some instances eyewitness identifications based on suggestive procedures, such as show-ups, may undermine the reliability of eyewitness identifications, making the identifications inadmissible. *United States v. Wade,* 388 U.S. 218, 229–35, 87 S.Ct. 1926, 1933–37, 18 L.Ed.2d 1149 (1967), *Gilbert v. California,* 388 U.S. 263, 269–74, 87 S.Ct. 1951, 1954–57, 18 L.Ed.2d 1178, (1967), *Foster v. California,* 394 U.S. 440, 442 n. 2, 89 S.Ct. 1127, 1128 n. 2, 22 L.Ed.2d 402 (1969). However, as the New York Court of Appeals later perceived, "[t]he rule excluding improper showups and

evidence derived therefrom is different in both purpose and effect from the exclusionary rule applicable to confessions and the fruits of searches and seizures." *People v. Adams,* 53 N.Y.2d 241, 250, 440 N.Y.S.2d 902, 423 N.E.2d 379 (1981). In Fourth and Fifth Amendment cases, illegally obtained evidence is suppressed even though it may otherwise be reliable evidence of guilt. *See Manson v. Brathwaite,* 432 U.S. 98, 113 n. 13, 97 S.Ct. 2243, 2252 n. 13, 53 L.Ed.2d 140, (1976). The exclusion of evidence based on improper pretrial identifications, however, is based on the reliability of the evidence itself. "It is the *likelihood of misidentification* which violates a defendant's right to due process," *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), (emphasis added), rather than the manner in which the evidence was obtained.

> Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive confrontations are condemned for the further reason that the increased chance of misidentification is gratuitous. But as *Stovall* [*v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)] makes clear, the admission of evidence of a showup without more does not violate due process.

*Id.,* 409 U.S. at 198, 93 S.Ct. at 382. Thus a suggestive pre-indictment identification, unlike a warrantless search, does not itself intrude upon a constitutionally protected interest.

Instead of a strict exclusionary rule in this area

> [c]onvictions based on witness identification at trial following photo identifications will be set aside only if the photo identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). This analysis has been further refined requiring courts to consider whether, despite a suggestive confrontation, an identification is reliable under "the totality of circumstanc-

es." *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401. Factors to be weighed against the corrupting effect of the suggestive confrontation include

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers,* 409 U.S. at 199–201, 93 S.Ct. at 382–83, *Manson v. Brathwaite,* 432 U.S. at 114, 97 S.Ct. at 2253.

■ Although it is conceded that the photo showup was suggestive, the state contends that the procedure was necessary. However, the "totality of circumstances" surrounding the shooting and the photo showup indicates that Davis' opportunity to observe the assailant at the time of the shooting was adequate to independently support his identification of Carter, thus there was no substantial likelihood of misidentification. Justification for the showup, or lack of it, is unrelated to this finding, which governs the disposition of the suggestive confrontation question. Therefore, I express no opinion as to whether the photo showup was necessary.

The Supreme Court has found that less-than-ideal conditions may be adequate to enable victims of violent crime to form accurate mental impressions of their assailants. Fifteen to thirty minutes in a dark kitchen lit only from an adjoining bedroom and out-of-doors by moonlight, was sufficient in *Neil v. Biggers,* 409 U.S. at 193–94, 200, 93 S.Ct. at 379–80, 382, and a momentary view on a dark highway under passing headlights was sufficient in *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970). Davis was in the assailant's presence for fifteen to twenty minutes in a small apartment, with light ·emanating from a television.

The Supreme Court and the Second Circuit have noted that victims of crime, unlike casual observers, have a special incentive to closely observe and retain an image of the perpetrator. *Neil v. Biggers,* 409 U.S. at 200, 93 S.Ct. at 382, *citing United States ex rel. Phipps v. Follette,* 428 F.2d 912, 915 (2d Cir.1970), *cert. denied,* 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146 (1970). For at least part of his 15–20 minutes in the assailant's presence, Davis had every reason to pay the closest attention to every movement of a man who was threatening to kill him. Davis testified at trial that from his position on the floor he could see the assailant's face as he searched the apartment and Kelly. Thus this court agrees with the trial court's *Wade* finding that conditions at the time of the shooting were sufficient for Davis to form an accurate mental picture of Carter, upon which he based his identification.

Shortly after the shooting, Davis described the assailant to police in the presence of others who knew Carter and who had seen him. Based on this description, police issued an alarm for the arrest of Carter earlier on the night of the murder. However, because it is impossible to tell from the record what elements of the description were supplied by Davis and which by the others, the court cannot place much weight on this factor, except to note that the description lacks details of the assailant's facial features. This factor alone is not sufficient to undermine the reliability of Davis' identification of Carter.·

Each time Davis was asked to identify the assailant he expressed certainty that it was Carter. In this respect Davis' identification of Carter is distinguished from that in *Foster v. California,* 394 U.S. at 443, 89 S.Ct. at 1128–29, the only case in which the Supreme Court has found that a suggestive confrontation so tainted an identification as to make it unreliable and therefore inadmissible. The eyewitness in *Foster* could not make a positive identification after a lineup and a suggestive one-to-one confrontation; identification was made only after a second line-up at which the defendant was the only participant who had been in the first. Davis identified Carter with equal certainty at the photo showup, the proper photo lineup and several times at trial. In

addition, Davis was shown the single photo just eight hours after the shooting and the proper lineup occurred only five days later. Therefore the circumstances indicate that his recollection of the assailant was fresh in his mind at the time of the suggestive confrontation.

Davis' possible addiction to heroin is one other factor to be considered in the totality of circumstances. There is no indication in the record that Davis' awareness or powers of observation were impaired at the time of the shooting. Thus there is no reason to discount Davis' identification on this ground.

Weighing all of the *Biggers* factors, there was no substantial likelihood of irreparable misidentification. It was reasonable for the trial court to conclude that Davis' identification was based on observations made independently of the suggestive identification procedure.

■ Carter's second contention is similarly without merit. In the jury's hearing, Hallinan used the term "mug shots" with reference to the photo lineup he showed Davis five days after the shooting and Carter's trial counsel moved for a mistrial. The trial judge denied the motion, but immediately gave curative instructions. The judge then asked "Is that agreeable to you, Mr. Defense Attorney?" Carter's trial counsel replied affirmatively. Carter raised no further objection at trial.

While New York criminal procedure does not require that an "exception" be expressly taken to a trial court's disposition of an error in a criminal proceeding, in order to present a "question of law" for appeal purposes the objecting party must make known its position while the court can still effectively change its ruling or instruction. New York Crim.Proc.Law § 470.05(2) (McKinney 1971). Thus, after the trial judge denied Carter's motion for a mistrial and offered a curative instruction, it was incumbent upon Carter to make known any further objections on this point before the trial ended. Since Carter's attorney unreservedly accepted the instruction, Carter failed to preserve this claim as a question of law for appeal, according to New York procedural rules.

■ Nor has Carter shown the "cause" and "prejudice" for his waiver that is necessary to raise a constitutional issue for the first time in a federal habeas petition. *Francis v. Henderson,* 425 U.S. 536, 541–42, 96 S.Ct. 1708, 1711–12, 48 L.Ed.2d 149 (1976), *Wainwright v. Sykes,* 433 U.S. 72, 85–87, 97 S.Ct. 2497, 2505–07, 53 L.Ed.2d 594, (1977), *United States ex rel. Schaedel v. Follette,* 447 F.2d 1297, 1300 (2d Cir.1971). Even if Carter was prejudiced by the reference to "mug shots," his attempt to show cause fails. Given both the available option of approaching the sidebar and the frequency with which both sides registered objections during this trial, Carter's argument that it would have been bad trial strategy to controvert the court before the jury is unpersuasive. Moreover, a tactical choice ordinarily precludes a party from raising the substantive point later; the Supreme Court's rationale for disallowing pre-indictments procedural waivers made for strategic reasons applies equally well to strategic waivers made during trial. "If defendants were allowed to flout ... time limitations ... there would be little incentive to comply ... when a successful attack might simply result in a new [trial]." *Davis v. United States,* 411 U.S. 233, 241, 93 S.Ct. 1577, 1582, 36 L.Ed.2d 216 (1973), *quoted in Francis v. Henderson,* 425 U.S. at 540, 96 S.Ct. at 1710.

For the foregoing reasons, Carter's petition for a writ of habeas corpus is hereby denied.

IT IS SO ORDERED.