(Slip Opinion)           OCTOBER TERM, 2009                    1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## BEARD, SECRETARY, PENNSYLVANIA DEPARTMENT OF CORRECTIONS, ET AL. *v.* KINDLER

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 08–992.   Argued November 2, 2009—Decided December 8, 2009

Respondent Kindler was convicted of capital murder in Pennsylvania
state court, and the jury recommended a death sentence.   Kindler
filed postverdict motions challenging his conviction and sentence, but
before the trial court could consider the motions or the jury's death
recommendation, Kindler escaped and fled to Canada.   The state trial
court subsequently dismissed Kindler's postverdict motions because
of his escape.   Canadian authorities ultimately captured Kindler and
held him in jail pending extradition.   But before Kindler could be
transferred from Canadian custody, he escaped again, this time re-
maining at large for more than two years.   He was eventually recap-
tured and transferred to the United States.   Once back in this coun-
try, Kindler sought to reinstate his postverdict motions, but the trial
court denied relief, holding that the judge who had dismissed the mo-
tions had not abused his discretion under Pennsylvania's fugitive for-
feiture law.   Kindler argued on direct appeal that the trial court
erred in declining to address the merits of his postverdict motions,
but the Pennsylvania Supreme Court affirmed.   Kindler's claims
were rejected on state habeas, and he sought federal habeas relief.
Under the adequate state ground doctrine, a federal habeas court will
not review a claim rejected by a state court "if the decision of [the
state] court rests on a state law ground that is independent of the
federal question and adequate to support the judgment." *Coleman* v.
*Thompson*, 501 U. S. 722, 729.   The District Court nonetheless
granted Kindler's habeas petition, determining that the state fugitive
forfeiture rule did not provide an adequate basis to bar federal review
of Kindler's habeas claims.   The Third Circuit affirmed, and the
Commonwealth petitioned for certiorari.   It argued that the Third

Circuit had held the state fugitive forfeiture rule automatically inadequate because the state courts had discretion in applying it, and the Commonwealth sought review of that holding. The Court granted that petition.

*Held:* A state procedural rule is not automatically "inadequate" under the adequate state ground doctrine—and therefore unenforceable on federal habeas review—because the state rule is discretionary rather than mandatory. The question whether a state procedural ruling is adequate is itself a question of federal law. *Lee* v. *Kemna*, 534 U. S. 362, 375. This Court has framed the adequacy inquiry by asking whether the state rule was "firmly established and regularly followed." *Id.*, at 376. A discretionary state procedural rule can serve as an adequate ground to bar federal habeas review even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others. A contrary holding would pose an unnecessary dilemma for the States: They could preserve flexibility by granting courts discretion to excuse procedural errors, but only at the cost of undermining the finality of state-court judgments. Or States could preserve the finality of their judgments by withholding such discretion, but only at the cost of precluding any flexibility in applying the rules. If forced to choose, many States would opt for mandatory rules to avoid the high costs of plenary federal review. That would be unfortunate in many cases, as discretionary rules are often desirable. The federal system, for example, often grants the trial judge broad discretion when his ringside perspective at the main event offers him a comparative advantage in decisionmaking. The States have followed suit. Given the federalism and comity concerns motivating the adequate state ground doctrine in the habeas context, see *Coleman, supra,* at 730, this Court should not disregard discretionary state procedural rules that are in place in nearly every State and are substantially similar to those given full force in federal courts. Cf. *Francis* v. *Henderson*, 425 U. S. 536, 541–542. Pp. 7–9.

542 F. 3d 70, vacated and remanded.

ROBERTS, C. J., delivered the opinion of the Court, in which all other Members joined, except ALITO, J., who took no part in the consideration or decision of the case. KENNEDY, J., filed a concurring opinion, in which THOMAS, J., joined.

NOTICE: This opinion is subject to formal revision before publication in the
preliminary print of the United States Reports. Readers are requested to
notify the Reporter of Decisions, Supreme Court of the United States, Wash-
ington, D. C. 20543, of any typographical or other formal errors, in order
that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 08–992

_____

## JEFFREY A. BEARD, SECRETARY, PENNSYLVANIA DEPARTMENT OF CORRECTIONS, ET AL., PETITIONERS *v.* JOSEPH J. KINDLER

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

[December 8, 2009]

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

A federal habeas court will not review a claim rejected by a state court "if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman* v. *Thompson*, 501 U. S. 722, 729 (1991). We granted certiorari to decide the following question: "Is a state procedural rule automatically 'inadequate' under the adequate-state-grounds doctrine—and therefore unenforceable on federal habeas corpus review—because the state rule is discretionary rather than mandatory?" Pet. for Cert. i. Petitioners argue the correct answer is "no." At oral argument, respondent—consistent with his position below—expressly agreed. We do too, and accordingly vacate the judgment of the Court of Appeals.

I

In 1982, Joseph Kindler, along with Scott Shaw and David Bernstein, burglarized a music store in Bucks County, Pennsylvania. Police stopped the getaway car

and arrested Shaw and Bernstein. In a harbinger of things to come, Kindler escaped. *Commonwealth* v. *Kindler*, 536 Pa. 228, 236, 639 A. 2d 1, 5, cert. denied, 513 U. S. 933 (1994).

Police later arrested Kindler and charged him with burglary. He was released on bail. Bernstein agreed to testify against Kindler, but Kindler had other plans. At about 2:30 a.m. on July 25, 1982, Kindler and Shaw attacked Bernstein outside his apartment. Kindler beat Bernstein with a baseball bat approximately 20 times, and Shaw shocked Bernstein 5 times with an electric prod. Bernstein at that point was still alive but unable to move, and Kindler and Shaw dragged their victim to their nearby car, loaded him in the trunk, and drove to the Delaware River. At the river, Kindler tied a cinder block around Bernstein's neck and dumped him in the water. A forensic examiner later determined that Bernstein died of drowning and massive head injuries. 536 Pa., at 236–239, 639 A. 2d, at 5–6.

Kindler was brought to trial and convicted of capital murder. The jury recommended a death sentence, and Kindler filed postverdict motions. *Id.*, at 230–231, 639 A. 2d, at 2.

But on September 19, 1984, before the trial court could consider the motions or the jury's death recommendation, Kindler escaped. *Ibid.* In an organized effort to saw through the external prison bars with smuggled tools, Kindler broke out of the maximum-security wing of the prison and headed for Canada. See *Commonwealth* v. *Kindler*, 554 Pa. 513, 517–518, and n. 4, 722 A. 2d 143, 145, and n. 4 (1998).

Kindler remained a fugitive in Canada until April 26, 1985, when he was arrested in Quebec for separate burglary offenses. The United States sought Kindler's return, but an extradition treaty allowed Canada to refuse to hand over anyone likely to face execution. See *Kindler* v.

*Canada (Minister of Justice)*, [1991] 2 S. C. R. 779.

Kindler turned into something of a local celebrity. He even appeared on Canadian television, explaining, among other things, how he had escaped and why he chose Canada: "I knew there was no death penalty here." CTV National News: Joseph Kindler's Fate Unresolved (Canadian television broadcast Sept. 22, 1985) (videos available in Clerk of Court's case file). Canadian authorities ultimately acquiesced to overtures from the United States and agreed to extradite Kindler. *Kindler*, *supra*, at 231, 639 A. 2d, at 2.

But before Kindler could be transferred from Canadian custody, he escaped again. On the night of October 23, 1986, Kindler broke through a skylight on the 13th floor of the jail (his fellow inmates had hoisted him up to the skylight 15 feet above the floor) and escaped to the roof, where he stood 175 feet above ground. Armed with 13 stories' worth of bedsheets tied together, Kindler safely rappelled down the side of the jail. (A fellow escapee was not as lucky—the sheets ripped on his way down, causing him to fall 50 feet to his death.) *Kindler*, 554 Pa., at 517–519, 722 A. 2d, at 145.

This time, Kindler remained on the lam for more than two years, until he was featured on the popular television show, "America's Most Wanted." Characterizing Kindler as "an above average criminal" and "a chess player who understands when to make his move," the show asked viewers for information to help capture him. *America's Most Wanted*, Sept. 4, 1988, Season 1, Episode 30, at 10:01. Several viewers recognized Kindler and notified Canadian authorities, who arrested him in September 1988. 554 Pa., at 519, 722 A. 2d, at 145.

Kindler again fought extradition. On September 16, 1991, after three years of litigation, the Supreme Court of Canada rejected Kindler's efforts. See *Kindler*, 2 S. C. R. 779. That same day, Canadian officials extradited Kindler

to the United States.  *Kindler* v. *Horn*, 291 F. Supp. 2d
323, 334 (ED Pa. 2003).

In the meantime, in 1984, the Pennsylvania trial court
had dismissed Kindler's postverdict motions because of his
original escape.  Once back in the United States, Kindler
filed a motion to reinstate those challenges to his convic-
tion and sentence.  The trial court denied the reinstate-
ment motion, holding that the trial court judge who had
dismissed the postverdict motions in 1984 had not abused
his discretion.  In October 1991—more than seven years
after the jury's death recommendation—the court formally
imposed the death sentence.  *Commonwealth* v. *Kindler*,
No. 2747 etc. (Pa. Ct. Common Pleas, Feb. 28, 1992), App.
66–70.

Kindler appealed, arguing that the trial court erred in
declining to address the merits of his postverdict motions.
The Pennsylvania Supreme Court affirmed.  *Kindler*, 536
Pa., at 232–234, 639 A. 2d, at 3.  That court recognized
that "trial courts, when faced with a defendant in fugitive
status, . . . have every right to fashion an appropriate
response[,] which can include the dismissal of pending
post-verdict motions."  *Id.,* at 233, 639 A. 2d, at 3.  The
court then determined that the trial court's decision to
dismiss Kindler's claims fell within its authority:  The
"dismiss[al] [of] the post-verdict motions was a reasonable
response to Appellant's 'flouting' of the authority of the
court."  *Id.,* at 233–234, 639 A. 2d, at 3.  Under Pennsyl-
vania's fugitive forfeiture law, the court concluded, Kin-
dler's case therefore came to it "without any allegations of
error (direct or collateral) preserved."  *Id.,* at 234, 639
A. 2d, at 4.

The Pennsylvania Supreme Court nonetheless con-
ducted the "limited review" mandated for death sentences
under Pennsylvania law.  Under that review, the court
was required to confirm that the evidence was sufficient to
support the conviction of first-degree murder and at least

one aggravating factor, and that the sentence was not excessive, disproportionate, or the product of passion or prejudice. *Id.,* at 234–235, 639 A. 2d, at 4. Satisfied that Kindler's conviction met these standards, the court affirmed his conviction and sentence. We denied certiorari. *Kindler* v. *Pennsylvania*, 513 U. S. 933 (1994).

On state habeas, the Court of Common Pleas rejected Kindler's claims. That court held that the Pennsylvania Supreme Court had already ruled that Kindler's escape forfeited all claims challenging his conviction and sentence that Kindler may once have been entitled to bring. *Commonwealth* v. *Kindler*, No. 2747 etc. (July 23, 1997), App. 183, 187–188. The Pennsylvania Supreme Court affirmed. *Kindler*, 554 Pa., at 514, 722 A. 2d, at 143.

Kindler then sought federal habeas relief. The District Court determined that the fugitive forfeiture rule did not provide an adequate basis to bar federal review of Kindler's habeas claims. 291 F. Supp. 2d, at 340–343. The District Court then proceeded to address the merits, granting Kindler's petition on the grounds that he was sentenced based on jury instructions that were unconstitutional under *Mills* v. *Maryland*, 486 U. S. 367 (1988), and that the prosecutor improperly introduced an aggravating factor at sentencing. 291 F. Supp. 2d, at 346–351, 357–358. The court rejected Kindler's ineffective assistance of counsel claim. *Id.*, at 356.

The Third Circuit affirmed. That court began by recognizing that "[a] procedural rule that is consistently applied in the vast majority of cases is adequate to bar federal habeas review even if state courts are willing to occasionally overlook it and review the merits of a claim for relief where the rule would otherwise apply." *Kindler* v. *Horn*, 542 F. 3d 70, 79 (2008). The Court of Appeals then considered the Pennsylvania fugitive forfeiture rule in place at the time of Kindler's first escape: "Pennsylvania courts had discretion to hear an appeal filed by a fugitive who

had been returned to custody before an appeal was initiated or dismissed. . . . Accordingly, the fugitive forfeiture rule was not 'firmly established' and therefore was not an independent and adequate procedural rule sufficient to bar review of the merits of a habeas petition in federal court." *Ibid.* (citing *Doctor* v. *Walters*, 96 F. 3d 675, 684–686 (CA3 1996)). The court thus determined that "the state trial court still had discretion to reinstate his post-verdict motions. Accordingly, we conclude that, under *Doctor*, Pennsylvania's fugitive waiver law did not preclude the district court from reviewing the merits of the claims raised in Kindler's habeas petition." 542 F. 3d, at 80. Turning to the merits, the Court of Appeals disagreed with the District Court on the improper aggravating factor claim, but held that Kindler was entitled to relief based on his *Mills* and ineffective assistance of counsel claims. 542 F. 3d, at 80–87.

The Commonwealth petitioned for certiorari, arguing that the Court of Appeals' determination that state discretionary rules are automatically inadequate conflicted with the holdings of other Courts of Appeals and warranted this Court's review. Pet. for Cert. 6–11. Kindler countered that the Commonwealth had mischaracterized the Third Circuit's holding. Relying on the court's citation of the *Doctor* opinion, Kindler argued that the Third Circuit did not hold that discretionary state rules are automatically inadequate; rather the court determined that the state courts applied "a *new* and *different* rule from that in existence at the time of the alleged default." Brief in Opposition 3. It was that new rule, Kindler maintained, that the Third Circuit found inadequate. *Ibid.*

We granted the Commonwealth's petition for certiorari. 556 U. S. \_\_\_ (2009). That petition asks us to decide whether discretionary procedural rulings are automatically inadequate to bar federal court review on habeas.

## II

The question whether a state procedural ruling is adequate is itself a question of federal law. *Lee* v. *Kemna*, 534 U. S. 362, 375 (2002). We have framed the adequacy inquiry by asking whether the state rule in question was "'firmly established and regularly followed.'" *Id.*, at 376 (quoting *James* v. *Kentucky*, 466 U. S. 341, 348 (1984)).

We hold that a discretionary state procedural rule can serve as an adequate ground to bar federal habeas review. Nothing inherent in such a rule renders it inadequate for purposes of the adequate state ground doctrine. To the contrary, a discretionary rule can be "firmly established" and "regularly followed"—even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others. See Meltzer, State Court Forfeitures of Federal Rights, 99 Harv. L. Rev. 1128, 1140 (1986) ("[R]efusals to exercise discretion do not form an important independent category under the inadequate state ground doctrine").

A contrary holding would pose an unnecessary dilemma for the States: States could preserve flexibility by granting courts discretion to excuse procedural errors, but only at the cost of undermining the finality of state court judgments. Or States could preserve the finality of their judgments by withholding such discretion, but only at the cost of precluding any flexibility in applying the rules.

We are told that, if forced to choose, many States would opt for mandatory rules to avoid the high costs that come with plenary federal review. See, *e.g.*, Brief for State of California et al. as *Amici Curiae* 19; Brief for Criminal Justice Legal Foundation as *Amicus Curiae* 14. That would be unfortunate in many cases, as discretionary rules are often desirable. In some circumstances, for example, the factors facing trial courts "are so numerous, variable and subtle that the fashioning of rigid rules would be more likely to impair [the trial judge's] ability to

deal fairly with a particular problem than to lead to a just result." *United States* v. *McCoy*, 517 F. 2d 41, 44 (CA7) (Stevens, J.), cert. denied, 423 U. S. 895 (1975); see also Friendly, Indiscretion About Discretion, 31 Emory L. J. 747, 760–761 (1982). The result would be particularly unfortunate for criminal defendants, who would lose the opportunity to argue that a procedural default should be excused through the exercise of judicial discretion. See *Henry* v. *Mississippi*, 379 U. S. 443, 463, n. 3 (1965) (Harlan, J., dissenting) ("If, in order to insulate its decisions from reversal by this Court, a state court must strip itself of the discretionary power to differentiate between different sets of circumstances, the [adequate state ground] rule operates in a most perverse way").

It is perhaps unsurprising, then, that the federal system often grants broad discretion to the trial judge when his ringside perspective at the "'main event'" offers him a comparative advantage in decisionmaking. *Wainwright* v. *Sykes*, 433 U. S. 72, 90 (1977); cf. *United States* v. *Poynter*, 495 F. 3d 349, 351–352 (CA6 2007). The States seem to value discretionary rules as much as the Federal Government does. See Brief for State of California et al. as *Amici Curiae* 16–17 (citing various state discretionary procedural rules). In light of the federalism and comity concerns that motivate the adequate state ground doctrine in the habeas context, see *Coleman*, 501 U. S., at 730, it would seem particularly strange to disregard state procedural rules that are substantially similar to those to which we give full force in our own courts. Cf. *Francis* v. *Henderson*, 425 U. S. 536, 541–542 (1976). Even stranger to do so with respect to rules in place in nearly every State, and all at one fell swoop.

We take our holding in this case to be uncontroversial— so uncontroversial, in fact, that both parties agreed to the point before this Court. See Tr. of Oral Arg. 29–31. Rather than defending the question on which we granted

certiorari—whether discretionary rules are automatically inadequate—Kindler argues that the Pennsylvania courts did not apply a discretionary rule at all, but instead applied a new rule mandating dismissal. Such a mandatory dismissal, Kindler contends, constituted a break from past discretionary practice, and thus does not provide an adequate state ground to bar his federal claims. We leave it to the Court of Appeals to address that argument, and any others Kindler may have preserved, on remand.

For its part, the Commonwealth urges us not only to reject a *per se* rule about discretionary rulings, but also to undertake "[a] new effort to state a standard for inadequacy." Brief for Petitioners 25. *Amici* supporting the Commonwealth join in that request. See Brief for Criminal Justice Legal Foundation as *Amicus Curiae* 6–10. We decline that invitation as well. The procedural default at issue here—escape from prison—is hardly a typical procedural default, making this case an unsuitable vehicle for providing broad guidance on the adequate state ground doctrine.

If our holding in this case is narrow, it is because the question we granted certiorari to decide is narrow. Answering that question is sufficient unto the day.

The judgment of the Court of Appeals for the Third Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*


JUSTICE ALITO took no part in the consideration or decision of this case.

# SUPREME COURT OF THE UNITED STATES

_____

No. 08–992

_____

JEFFREY A. BEARD, SECRETARY, PENNSYLVANIA
DEPARTMENT OF CORRECTIONS, ET AL.,
PETITIONERS *v.* JOSEPH J. KINDLER

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT

[December 8, 2009]

JUSTICE KENNEDY, with whom JUSTICE THOMAS joins,
concurring.

Due consideration of the phrasing in the question pre-
sented and of the arguments and concessions by counsel
leads to the conclusion that this case should be vacated
and remanded, and I join the Court's opinion. The appar-
ent difficulty the Court of Appeals for the Third Circuit
found in accepting the Supreme Court of Pennsylvania's
procedural bar conclusion, however, invites this further
comment.

The adequate state ground doctrine cannot be applied
without consideration of the purposes it is designed to
serve. By refraining from deciding cases that rest on an
adequate and independent state ground, federal courts
show proper respect for state courts and avoid rendering
advisory opinions. *Michigan* v. *Long*, 463 U. S. 1032, 1040
(1983). The claimed adequate and independent state
ground at issue in this case is a state procedural rule. We
have not allowed state courts to bar review of federal
claims by invoking new procedural rules without adequate
notice to litigants who, in asserting their federal rights,
have in good faith complied with existing state procedural
law. "Novelty in procedural requirements cannot be per-
mitted to thwart review in this Court applied for by those

who, in justified reliance upon prior decisions, seek vindication in state courts of their federal constitutional rights." *NAACP* v. *Alabama ex rel. Patterson*, 357 U. S. 449, 457–458 (1958). We have also been mindful of the danger that novel state procedural requirements will be imposed for the purpose of evading compliance with a federal standard. See, *e.g., NAACP* v. *Alabama ex rel. Flowers*, 377 U. S. 288, 293–302 (1964).

Neither of these concerns applies here. First, no one could seriously entertain the notion that Kindler acted in "justified reliance" when he fled beyond the jurisdiction of the Pennsylvania courts. Even if a hypothetical escapee studiously examined the case law before making an informed decision that flight was worth it, that is not the reliance the law should be required to consider. There is no justification for an unlawful escape, which "operates as an affront to the dignity of [a] court's proceedings." *Ortega-Rodriguez* v. *United States*, 507 U. S. 234, 246 (1993). And if some prior court rulings allowed a former escapee to reinstate forfeited claims, there is no convincing reason to say a future escapee is entitled to similar treatment. Nor is there any indication that the Supreme Court of Pennsylvania adopted its forfeiture rule out of any hostility toward legitimate constitutional claims.

It is most doubtful that, in light of its underlying purposes, the adequate state ground doctrine ought to prevent a State from adopting, and enforcing, a sensible rule that the escaped felon forfeits any pending postverdict motions. The law is entitled to protect the regularity and predictability of its own processes, and its own interest in the prompt adjudication of disputed issues, by imposing a rule of waiver quite without regard to some notion of express or constructive reliance by the one who escapes. And if that principle had not been fully explicated in prior decisions, it seems to me that the State can establish a new baseline without later having its procedural bar ignored by the

federal courts. This should be true even if the principles barring the postverdict motions are first elaborated in the instant case.

The process of elaborating, defining, and then shaping a State's decisional law after considering the competing arguments in a specific case rests on this premise: Novel facts and circumstances may disclose principles that, while consistent with the logic and rationality the law seeks and in that sense predictable, still have not yet been defined with precision in earlier cases. This is the dynamic of the case system we rely upon to explain the law.

The adequate state ground doctrine ought not to foreclose the case process in the separate States. A too-rigorous or demanding insistence that procedural requirements be established in all of their detail before they can be given effect in federal court would deprive the States of the case law decisional dynamic that the Judiciary of the United States finds necessary and appropriate for the elaboration of its own procedural rules. See, *e.g., Smith* v. *United States*, 94 U. S. 97 (1876). Save where there is exclusive jurisdiction or federal supremacy, a proper constitutional balance ought not give federal courts latitude in the interpretation and elaboration of its law that it then withholds from the States. There is no sense in applying the adequate state ground rule without its being informed by these principles.

Whether the structure of this case either permits or requires consideration of these matters is not clear at this stage. In a proper case, however, these concerns should be addressed. It seems most doubtful that this Court can or should require federal courts to disregard a state procedural ground that was not in all respects explicit before the case when it was first announced, absent a showing of a purpose or pattern to evade constitutional guarantees. And this is particularly so when the state procedural requirement arose from the necessity, in new circum-

stances, to prevent a travesty of the State's own respected system. In this context, the objecting party ought not to have the power to block federal courts from honoring state-law determinations that were otherwise valid, enforceable, and consistent with constitutional guarantees.